Michael B. Lawler (SBN 50972)
Kasey C. Townsend (SBN 152992)
Anastasia K. Mazzella (SBN 245201)
**MURCHISON & CUMMING, LLP**
2010 Crow Canyon Place, Suite 380
San Ramon, California  94583
Telephone: (925) 365-3170
Facsimile: (925) 365-3180
E-Mail:    ktownsend@murchisonlaw.com
mlawler@murchisonlaw.com
amazzella@murchisonlaw.com

Attorneys for Specially Appearing
Defendants, BYRIDER FRANCHISING,
INC. (erroneously sued and served as J.D.
Byrider, Inc.), Grace Auto, Inc. dba J.D.
Byrider (erroneously sued as JD Byrider of
Chandler), and Grace Finance, Inc. dba
CNAC (erroneously sued as CarNow
Acceptance Company)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA HARTUNG, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>J.D. BYRIDER, INC.; JD BYRIDER OF CHANDLER; CARNOW ACCEPTANCE COMPANY; JOHN ANDERSON; and T-MOBILE USA, INC. and DOES 1 through 10 inclusive,<br><br>Defendants. | CASE NO. C 08-01380 SC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO F.R.C.P. RULE 12(b)(2), OR IN THE ALTERNATIVE, TRANSFER VENUE, OR COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[Filed Concurrently with Declarations of Robert Hirst and Jeffrey Higgins]<br><br>**Assigned to Hon. Samuel Conti**<br><br>**Date :   July 25, 2008**<br>**Time;   10:00 a.m.**<br>**Courtroom: 1, 17th Floor** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

/ / /

/ / /

C 08-01380 SC

PLEASE TAKE NOTICE THAT on July 25, 2008 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 1 of the above-entitled court located at 450 Golden Gate Avenue, San Francisco, California, specially-appearing defendants BYRIDER FRANCHISING, INC. (erroneously sued and served as J.D. BYRIDER, INC.), GRACE AUTO, INC. dba J.D. BYRIDER (erroneously sued and served as J.D. BYRIDER OF CHANDLER), and GRACE FINANCE, INC. dba CNAC (erroneously sued and served as CARNOW ACCEPTANCE COMPANY) will move this Court for an order as follows:

(1)    Dismissing specially-appearing defendants from plaintiff JESSICA HARTUNG's complaint for lack of personal jurisdiction; or in the alternative,

(2)    Transferring this case to the Eastern District of the United States District Court of California, which is the proper venue; or in the alternative,

(3)    If the Court concludes that personal jurisdiction exists over any of the specially-appearing defendants and that venue in the Northern District is proper, compelling arbitration and staying proceedings.

This Motion is made pursuant to Rule 12(b)(2) and Rule 12(b)(3) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1391, 9 U.S.C. § 3 and 9 U.S.C. § 4 and is made on the following grounds: (1) this Court lacks personal jurisdiction over these specially-appearing defendants; (2) venue is improper in the Northern District because not all of the named defendants reside in the State of California; (3) a substantial part of the events or omissions giving rise to plaintiff's claims allegedly occurred in Stanislaus County, which is located in the Eastern District of California; and (4) plaintiff's claims are subject to binding arbitration pursuant to the Retail Installment Contract and Security Agreement and Buyer's Statement of Understanding executed by plaintiff on or about April 5, 2007.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Robert Hirst and Jeffrey Higgins filed concurrently herewith, the records and files herein, and upon such other evidence as may be presented at the time this motion is heard.

1  DATED: May 27, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MURCHISON & CUMMING, LLP

By: _____
Michael B. Lawler
Kasey C. Townsend
Anastasia K. Mazzella
Attorneys for Specially Appearing
Defendants, BYRIDER FRANCHISING,
INC. (erroneously sued and served as J.D.
Byrider, Inc.), Grace Auto, Inc. dba J.D.
Byrider (erroneously sued as JD Byrider of
Chandler), and Grace Finance, Inc. dba
CNAC (erroneously sued as CarNow
Acceptance Company)

C 08-01380 SC

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ....................................................... 4

II.   FACTUAL BACKGROUND.......................................... 4

III.  THIS COURT DOES NOT HAVE PERSONAL JURISDICTION
      OVER THESE SPECIALLY-APPEARING DEFENDANTS ..... 5

   A. None of the Three Traditional Bases for Jurisdiction Exists
      Over any of the Specially-Appearing Defendants. ...............7

   B. Byrider Franchising Does Not Have Sufficient Minimum
      Contacts with California to Support the Exercise of General
      Or Specific Personal Jurisdiction ................................ 8

      1.  General Jurisdiction ........................................ 8

      2.  Specific Jurisdiction ...................................... 10

   C. Grace Auto Does Not Have Sufficient Minimum Contacts with
      California to Support the Exercise of General or Specific
      Personal Jurisdiction ............................................. 12

      1.  Grace Auto and Grace Finance are separate
          Corporations ..............................................12

      2.  Grace Auto has no contacts with California whatsoever
          And, thus, is not subject to general jurisdiction .............. 13

      3.  Grace Auto played no role in the instant action and, thus,
          Is not subject to specific jurisdiction ......................... 13

   D. Grace Finance Does Not Have Sufficient Minimum Contacts
      California to Support the Exercise of General or Specific
      Personal Jurisdiction ............................................. 14

      1.  Grace Finance's contacts with California are not
          "substantial or continuous and systematic." ................... 15

      2.  Grace Finance played no role in the instant action and,
          Thus, is not subject to specific jurisdiction .................... 15

IV.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS
      CASE FOR IMPROPER VENUE ..................................... 16

   A. Not All of the Defendants Reside in California ................... 17

   B. The Eastern District of California is the Proper Venue
      Because A Substantial Part of the Events Giving Rise to
      Plaintiff's Claims Occurred in Stanislaus County ................ 17

i

V.   IF PERSONAL JURISDICTION EXISTS AND VENUE IS PROPER THEN THE COURT MUST COMPEL ARBITRATION AND STAY PROCEEDINGS ...................................................... 18

    A.   The Arbitration Agreement is Valid and Enforceable ............ 18

        1.   *The arbitration agreement is not procedurally Unconscionable* ................................................ 19

        2.   *The arbitration agreement is not substantively Unconscionable* ............................................. 19

        3.   *Plaintiff agreed to arbitrate* .............................. 20

    B.   Plaintiff's Claims Fall within the Purview of the Arbitration Agreement ............................................................. 21

    C.   Byrider Francishing Does Not Object to Binding Arbitration ............................................................. 22

VI.  CONCLUSION   ............................................................ 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Table of Authorities**

<u>Case Law</u>                                                    <u>Page No.</u>

<u>Armendariz v. Foundation Health Psych. Servs.</u>, 24 Cal.4[th] 83,
114 (2000) ............................................................. 19

<u>AT & T tech., Inc. v. Commc'ns Workers of Am.</u>,
475 U. S. 643, 650 (1986) ........................................... 21

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc. <u>223 F.2d 1082</u>,
1086 (9th Cir. 2000) .................................................. 8

<u>Beck v. Arthur Murray, Inc.</u>, 245 Cal.App.2d 976, 981 (1966) ............ 11

<u>Bischoff v. DirectTV, Inc.</u>, 180 F. Supp.2d 1097, 1102
(C.D. Cal. 2002) ..................................................... 19

<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 477-78 (1985) ........... 6,7

<u>Burnham v. Superior Court</u>, 495 U.S. 604, 610-611 (1990) ............... 7

<u>Calder v. Jones,</u> 465 U.S. 783, 790 (1984) ............................. 5

<u>Chiron Corp. v. Ortho Diagnostic Systems, Inc.</u>, 207 F.3d 1126,
1130 (9th Cir. 2000) ................................................ 18

<u>Comedy Club, Inc. v. Improve West Associates</u>, 514 F.3d 833, 842
(9th Cir. 2007) ...................................................... 21

<u>Darner Motor Sales, Inc., v. Universal Underwriters Ins. Co.</u>,
140 Ariz. 383, 392 (1984) ............................................ 19

<u>Data Disc, Inc. v. Systems Technology Assoc., Inc.</u> 557 F.2d 1280,
1287 (9th Cir. 1997) ................................................. 6

<u>District No. 1 Pacific Coast District v. Alaska</u>, 682 F.2d 797, 799
(9th Cir. 1982) ..................................................... 17

<u>Fields v. Sedgwick Associated Risks, Ltd.</u>, 796 F.2d 299, 301
(9th Cir.1986) ...................................................... 6

<u>First Options of Chi., Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995) ............ 19

<u>Fittante v. Palm Springs Motors, Inc.</u> 105 Cal.App.4[th] 708, 721 (2004) ... 19

<u>Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.</u>,
784 F.2d 1392, 1396 (9th Cir. 1986) ................................. 6,7

<u>Harrington v. Pulte Home Corp.</u>, 211 Ariz 241, 248-253 (2005) ........... 19,20

<u>Helicopteros Nacionales de Colombia S. A. v. Hall</u>,
466 U.S. 408, 417 (1984) ............................................14

<u>Hirsch v. Blue Cross</u>, 800 F.2d 1474, 1478 (9th Cir.1986) ................. 6

Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir. 2003) …. 18

Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) ……………….. 6

Kelton v. Stravinski, 138 Cal.App.4[th] 941, 947-948 (2006) …………….. 10

Leroy v. Great Western United Corp., 443 U. S. 173, 181 (1979) ……… 16

Magnecomp Corp. v. Athene Co., Ltd., 209 CA3d 526, 536-537 (1989).. 13,16

Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,
460 U. S. 1, 24 (1985) …………………………………………………………... 18

Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1439 (1994) ………………… 20

Nichols v. Arthur Murray, Inc., 248 Cal.App.2d 610, 613 (1967) ……… 10

Paccar Int'l., Inc. v. Commercial Bank of Kuwait, S.A.K.,
757 F.2d 1058, 1062 (9th Cir. 1985) ……………………………………. 7

Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 445 (1952).. 6

Rio Properties, Inc. v. Rio Int'l Linterlink, 284 F.3d 1007, 1019
(9th Cir.2002) …………………………………………………………….. 5

Sher v. Johnson, 911 F.2d 1357, 1365 (9th Cir. 1990) …………………. 7

Sink v. Aden Enterprises, Inc., 352 F.3d 1197, 1202 (9th Cir. 2003) …… 18

Terracom v. Valley Nat'l Bank, 49 F.3d 555, 559 (9th Cir.1995) ……….. 6

Thomson v. Anderson, 113 Cal.App.4[th] 258, 270 (2003) ……………….. 9

**Codes and Statues**                                                    **Page No.**

Corporations Code
        Section 31420 …………………………………………………………... 9

Federal Rules of Civil Procedure
        Rule 12(h)(1) ……………………………………………………….. 16

28 U.S.C. §1391 ……………………………………………………………….. 16,17

28 U.S.C. §1404 ……………………………………………………………….. 16

28 U.S.C. §1406 ……………………………………………………………….. 16,17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

This action arises out of damages allegedly sustained by plaintiff JESSICA HARTUNG (formerly Jessica Haverty) in or about January of 2008 as a result of allegedly unlawful and harassing debt collection attempts. Plaintiff filed a complaint against specially-appearing defendants BYRIDER FRANCHISING, INC. (erroneously sued and served as J.D. BYRIDER, INC.), GRACE AUTO, INC. dba J.D. BYRIDER (erroneously sued and served as J.D. BYRIDER OF CHANDLER), and GRACE FINANCE, INC. dba CNAC (erroneously sued and served as CARNOW ACCEPTANCE COMPANY) for the following causes of action: (1) violation of the California Rosenthal Fair Debt Collection Practices Act; (2) negligence; and (3) invasion of privacy.

These specially-appearing defendants contend that the Court lacks personal jurisdiction over them. None of the defendants are California corporations nor are they doing business in California. Alternatively, if there is sufficient personal jurisdiction, defendants contend that venue in the Northern District of California is improper. Not all of the defendants reside in California let alone in the Northern District. The proper venue is the Eastern District where a substantial part of the events giving rise to this action allegedly occurred. Finally, if the Court concludes that personal jurisdiction exists over any of the specially-appearing defendants and that venue in the Northern District is proper, then defendants contend that the Court must order plaintiff to submit to binding arbitration pursuant to the contract she executed on or about April 5, 2007.

## II.

## FACTUAL BACKGROUND

Plaintiff alleges that she purchased a car from "J.D. Byrider" and obtained financing from "CNAC." (Complaint, ¶ 19.) However, plaintiff's complaint incorrectly lumps defendants Byrider Franchising and Grace Auto together as "J.D. Byrider." (Complaint, ¶ 17.) In reality, Byrider Franchising is the franchisor and Grace Auto is the franchisee.

C 08-01380 SC

1  They are two independent corporations. (See generally Declarations of Jeffrey Higgins

2  and Robert Hirst, filed concurrently herewith.)

3      Plaintiff further alleges that she fell behind in her payments on the loan in or about

4  October 2007 when she moved and had trouble finding employment. (Complaint, ¶ 20.)

5  Plaintiff claims that at some point Byrider Franchising, Grace Auto, and/or Grace Finance

6  assigned her debt to defendant John Anderson for collection. (Complaint, ¶ 21.) Plaintiff

7  further claims that Mr. Anderson subsequently made unlawful and harassing collection

8  attempts in violation of the Federal Debt Collection Protection Act, 15 U.S.C. § 1692, and

9  California's parallel Rosenthal Act, Civil Code § 1788.10.    (Complaint, ¶¶ 22-73.)

10  Plaintiff admits she was living in Stanislaus County at the time this action was filed and

11  when Mr. Anderson allegedly contacted her in January of 2008. (Complaint, ¶¶ 3, 31.)

12  Plaintiff ultimately surrendered her car to Grace Finance dba CNAC. (Complaint, ¶ 62.)

13      Specially-appearing defendants maintain that they are separate and independent

14  corporate entities over which this Court lacks personal jurisdiction, or in the alternative,

15  proper venue. Specially-appearing defendants further contend that plaintiff entered into a

16  Retail Installment Contract and Security Agreement which contained a mandatory

17  arbitration provision that covers plaintiff's current dispute.

18                                            **III.**

19  **THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER THESE**

20                **SPECIALLY-APPEARING DEFENDANTS.**

21      Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may bring

22  a motion to dismiss on the ground that the court cannot assert personal jurisdiction over

23  that defendant. Although the defendant is the moving party, plaintiff bears the burden of

24  establishing that jurisdiction exists. <u>Rio Properties, Inc. v. Rio Int'l Interlink</u>, 284 F.3d

25  1007, 1019 (9th Cir. 2002). In analyzing jurisdictional issues, each defendant's contacts

26  with California must be assessed individually. <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984).

27      When assessing personal jurisdiction in a federal court, the starting point must

28  always be the "long arm" statute of the forum state. <u>Haisten v. Grass Valley Medical</u>

1  Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir.1986).  In California, a court
2  "may exercise jurisdiction on any basis not inconsistent with the Constitution of [the] state
3  or of the United States." Cal.Code Civ.Proc. § 410.10.  Thus, federal courts in California
4  "may exercise jurisdiction to the fullest extent permitted by due process."  Fields v.
5  Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir.1986).  Aside from the
6  "traditional" bases for personal jurisdiction, due process requires that the nonresident
7  "have certain minimum contacts with [the forum state] such that the maintenance of the
8  suit does not offend 'traditional notions of fair play and substantial justice.'" Terracom v.
9  Valley Nat'l Bank, 49 F.3d 555, 559 (9th Cir.1995) (quoting Int'l Shoe Co. v. Washington,
10  326 U.S. 310, 316 (1945)).

11      Under the "minimum contacts" analysis, there are essentially two types of personal
12  jurisdiction: general and specific.  General jurisdiction is when a defendant's contacts with
13  a forum state are so "substantial" or "continuous and systematic" as to justify the exercise
14  of jurisdiction over the defendant in all matters, even if the claims at issue are unrelated to
15  the defendant's forum-related activities.  Perkins v. Benguet Consolidated Mining Co., 342
16  U.S. 437, 445 (1952).  To gauge general jurisdiction, a court examines "all of the
17  defendant's activities that impact the [forum] state, including whether the defendant makes
18  sales, solicits or engages in business, serves the state's markets, designates an agent for
19  service of process, holds a license, has employees, or is incorporated here."  Hirsch v.
20  Blue Cross, 800 F.2d 1474, 1478 (9th Cir. 1986).

21      If the nonresident defendant's activities are not so pervasive as to subject him or her
22  to general jurisdiction, the court may assert specific jurisdiction for a cause of action
23  which arises out of the defendant's contacts with the forum.  Burger King Corp. v.
24  Rudzewicz, 471 U.S. 462, 477-78 (1985).  Whether specific jurisdiction will lie "turns on
25  the nature and quality of defendant's contacts in relation to the cause of action."  Data
26  Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1287 (9th Cir. 1997).  The
27  Ninth Circuit has articulated a clear three-part test for determining whether specific
28  personal jurisdiction may be exercised: (1) the nonresident defendant must do some act or

consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) plaintiff's claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. <u>Id.</u>  The first two requirements are "closely-related because they focus on the relationship of the defendant and the claim to the forum state." <u>Paccar Int'l., Inc. v. Commercial Bank of Kuwait, S.A.K.</u>, 757 F.2d 1058, 1062 (9th Cir. 1985).  If minimum contacts are shown, a rebuttable presumption arises that the exercise of jurisdiction is reasonable.  <u>Haisten</u>, <u>supra</u>, 784 F.2d at 1397.  Defendants must show that "jurisdiction in California would make the litigation 'so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent.' " <u>Sher v. Johnson</u>, 911 F.2d 1357, 1365 (9th Cir. 1990)(quoting <u>Burger King</u>, <u>supra</u>, 471 U.S. at 478.)

As set forth below, the traditional bases for personal jurisdiction do not exist in this case.  Furthermore, neither general nor specific jurisdiction exists over any of the moving defendants.   Moreover, it would be unreasonable to exercise jurisdiction over these defendants where they are separate, foreign corporations with little to no contacts, relationships, and/or activities in the State of California.  Accordingly, the Court should grant the instant motion to dismiss Byrider Franchising, Grace Auto, and Grace Finance for lack of personal jurisdiction.

**A.    <u>None of the Three Traditional Bases for Jurisdiction Exists Over Any of the Specially-Appearing Defendants.</u>**

There are three "traditional" bases for the exercise of personal jurisdiction recognized since early common law: (1) personal service within the state (physical presence), (2) domicile in the state, and (3) consent or appearance in the action. See e.g., <u>Burnham v. Superior Court</u>, 495 U.S. 604, 610-611 (1990).

Byrider Franchising is incorporated in Indiana, has its principal place of business in Carmel, Indiana, and was served with summons and complaint at its headquarters in

Carmel, Indiana. (Higgins Decl. ¶¶ 3 and 7.) As such, Byrider Franchising was not personally served in California nor is it domiciled in California. Byrider has not consented to jurisdiction nor has it appeared in this action. (Higgins Decl. ¶ 17.) Accordingly, there is no "traditional" basis for jurisdiction over Byrider Franchising.

Likewise, there is no traditional basis for jurisdiction over Grace Auto or Grace Finance. Plaintiff served summons and complaint on Grace Auto and Grace Finance in Arizona through a process server. (Hirst Decl. ¶ 3.) Furthermore, Grace Auto and Grace Finance are incorporated in Arizona and have their principal place of business in Arizona. (Hirst Decl. ¶¶ 6 and 7.) As such, they are not domiciled in California. Moreover, Grace Auto and Grace Finance have not consented to jurisdiction or appeared in this action. (Hirst Decl. ¶ 33.)

**B.** **Byrider Franchising Does Not Have Sufficient Minimum Contacts with California to Support the Exercise of General or Specific Personal Jurisdiction.**

In this case, exercising personal jurisdiction over Byrider Franchising would undoubtedly offend the "traditional notices of fair play and substantial justice." Byrider Franchising has only a few, sporadic "contacts" with California - none of which gave rise to plaintiff's claims. Moreover, plaintiff has failed to allege any facts in her complaint that would support the position that Byrider Franchising has substantial, or continuous and systematic contacts with California necessary to establish general jurisdiction. Likewise, plaintiff has failed to allege any facts establishing that the nature of Byrider Franchising's contacts in California in connection with the instant case are sufficient to establish specific jurisdiction. Accordingly, the Court should dismiss Byrider Franchising for lack of personal jurisdiction.

*1.* *General Jurisdiction.*

The standard for establishing general jurisdiction is high and requires that a defendant's contacts be of the sort that "approximate physical presence." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citations

1  omitted).   Here, Byrider Franchising's "contacts" with California are limited to the

2  following: (1) Byrider Franchising is registered with California's Department of

3  Corporations for the sole purpose of selling J.D. Byrider franchises in California; (2) there

4  is one J.D. Byrider franchise located in Visalia, California; (3) Byrider Franchising

5  advertises in a national trade magazine and maintains a informational website that may

6  reach some California residents. (Higgins Decl. ¶¶ 9-15.)  However, as set forth below,

7  none of these contacts are sufficient to establish that Byrider Franchising has a "physical

8  presence" in California.

9       In California, a franchisor must register with the Department of Corporations and

10  appoint a local agent for service of process in order to be qualified to sell franchises within

11  the state.  See Corp. Code § 31420.  However, a foreign corporation's designation of an

12  agent for service of process in California is not a submission to personal jurisdiction. See,

13  e.g., Thomson v. Anderson, 113 Cal.App.4th 258, 270 (2003) (dealing with California's

14  Franchise Investment Law).   Although service of summons may be made on the

15  designated agent, the action cannot be maintained against a foreign corporation absent

16  "minimum contacts" with California. Id.  In other words, the fact that Byrider Franchising

17  may have registered with the Department of Corporations and appointed a local agent for

18  service process does not automatically constitute general personal jurisdiction.

19       Furthermore, Byrider Franchising clearly lacks "substantial" or "continuous and

20  systematic." First, despite being registered with the State of California to sell franchises,

21  there is only one J.D. Byrider franchise located in the entire State of California. (Higgins

22  Decl. ¶¶ 9-10.)  This sole franchise is located in Visalia, which is within the Eastern

23  District of the United States District Court. The Visalia-based franchise is independently

24  owned and operated and is not a defendant in the instant lawsuit. (Higgins Decl. ¶ 10.)

25  Second, Byrider Franchising has never directed any of its advertising primarily toward

26  California residents and its website merely imparts information to potential car buyers and

27  franchisees. (Higgins Decl. ¶¶ 14-15.)  Third, Byrider Franchising has never had any

28  employees, servants, agents, officers, and/or directors residing or domiciled in California,

1    has never maintained any bank accounts in California, owned, leased, rented, controlled,

2    or maintained any real or personal property or other tangible assets in the State of

3    California, has never paid taxes in California, has never maintained or operated any

4    businesses, headquarters, branch offices or comparable facilities in California, and has

5    never maintained any telephone listings or mailing addresses in California. (Higgins Decl.

6    ¶¶ 8, 11-16.) Moreover, Byrider Franchising has never been a party to any lawsuit filed in

7    the State of California, except for the present action. (Higgins Decl. ¶ 18.)

8        In short, the record simply does not support a finding of general jurisdiction over

9    Byrider Franchising.

10          **2.**     *Specific Jurisdiction*

11        As established in the Declarations of Jeffrey Higgins and Robert Hirst, it is

12    undisputed that Byrider Franchising is merely the franchisor of Grace Auto and Grace

13    Finance (the franchisees). (Higgins Decl. ¶¶ 4-6; Hirst Decl. ¶¶ 4-5.) There are no facts

14    alleged in the complaint establishing that Byrider Franchising played any role in the acts

15    that allegedly occurred in California. Likewise, there are no facts alleged in the complaint

16    establishing that Byrider Franchising's sparse and sporadic contacts with California gave

17    rise to plaintiff's claims.

18        Plaintiff may argue that Byrider Franchising, as franchisor, may be held vicariously

19    liable for Grace Auto and/or Grace Finance's alleged acts in California and thus specific

20    jurisdiction exists. However, in order to exercise specific jurisdiction over a franchisor

21    who did not directly participate in the alleged misconduct, a plaintiff must establish the

22    existence of an agency relationship existed between the franchisor and franchisee. In

23    determining the existence of an agency relationship, the degree of control that the

24    franchisor has over the franchisee is generally the determinative factor. <u>Nichols v. Arthur</u>

25    <u>Murray, Inc.</u>, 248 Cal.App.2d 610, 613 (1967). If the franchise agreement gives the

26    franchisor complete or substantial control over the franchisee an agency relationship

27    exists. Otherwise, the franchisee will be considered an independent contractor. <u>See, e.g.,</u>

28    <u>Kelton v. Stravinski</u>, 138 Cal.App.4th 941, 947-948 (2006)(setting forth the general rules

          C 08-01380 SC

1   for vicarious liability of franchisors). The franchisor is permitted to retain such control as

2   is necessary to protect and maintain its trademark, trade name and goodwill. <u>Id.</u> at 948;

3   <u>see also</u>, <u>Beck v. Arthur Murray, Inc.</u>, 245 Cal.App.2d 976, 981 (1966) ("The mere

4   licensing of trade names does not create agency relationships, either ostensible or actual.")

5       In this case, Byrider Franchising has never exercised or retained substantial control

6   over Grace Auto or Grace Finance or any other J.D. Byrider/CNAC franchisee. Each J.D.

7   Byrider/CNAC franchise is independently owned and operated. (Higgins Decl. ¶ 6.)

8   Byrider Franchising does not control the day-to-day operation of the franchises and it has

9   never hired, supervised, or controlled a franchisee's employees, agents, or independent

10   contractors. (Higgins Decl. ¶ 6.) Moreover, Byrider Franchising has never dictated,

11   supervised, or controlled the method or manner in which a franchisee collects on car

12   loans. (Higgins Decl. ¶ 6.) In fact, when Byrider Franchising granted a franchise to Grace

13   Auto and Grace Finance, it had no reason to expect that the existence of these co-

14   franchisees in Arizona would have consequences in California. (Higgins Decl., ¶ 19.)

15   Most importantly, Byrider Franchising did not hire, supervise, or control defendant John

16   Anderson - the individual who allegedly contacted plaintiff in an attempt to collect on the

17   past-due car loan. (Higgins Decl. ¶ 20.)

18       Based on the foregoing, it is clear that Byrider Franchising was not involved in the

19   alleged debt collection practices that purportedly took place in California nor did Byrider

20   Franchising exercise sufficient control over Grace Auto, Grace Finance, or John Anderson

21   such that it could be held vicariously liable for their alleged misconduct. As such,

22   plaintiff cannot show that Byrider Franchising purposefully availed itself of the privilege

23   of conducting activities in California, or that plaintiff's claim arises out of or results from

24   the Byrider Franchising's forum-related activities, or that exercise of jurisdiction is

25   reasonable. Accordingly, the Court may dismiss this action against Byrider Franchising

26   for lack of personal jurisdiction.

27

28

C.    **Grace Auto Does Not Have Sufficient Minimum Contacts with California to Support the Exercise of General or Specific Personal Jurisdiction.**

Grace Auto has no contacts, relationships, or activities with California whatsoever. It is obvious that plaintiff named Grace Auto as a defendant in this action solely because she purchased her car from the Grace Auto dealership in Arizona. However, as set forth herein and in the Declaration of Robert Hirst, Grace Auto and Grace Finance are separate corporate entities and Grace Auto did not play any role in plaintiff's action.

### 1.    *Grace Auto and Grace Finance are separate corporations.*

The record clearly shows that Grace Auto and Grace Finance are separate and independent corporate entities with different functions. Although Grace Auto and Grace Finance are located in the same building, they were separately incorporated in Arizona in 2001. (Hirst Decl. ¶ 8.) Grace Auto sells automobiles pursuant to a "Retail Installment Contract and Security Agreement," which it then assigns to Grace Finance. (Id.) Grace Finance closes the loan with the customer and holds and collects on the note. (Id.) Thereafter, the only connection or relationship Grace Auto has with its customers is through a limited warranty for mechanical repairs, which is only valid at the Arizona dealership that sold the automobile. (Id.) Furthermore, since their incorporation, Grace Auto and Grace Finance have had separate employees, payroll, checkbooks, and managers. (Hirst Decl. ¶ 9.) The two entities have also filed separate tax returns in the State of Arizona and maintain separate corporate minutes. (Id.) Grace Auto and Grace Finance have never been general or special agents, alter egos, joint venturers, partners, or employees of one another. (Id.)

Based on the foregoing, it is clear that Grace Finance and Grace Auto are separate entities and plaintiff has the burden of establishing personal jurisdiction over each of them.

/ / /

/ / /

### 2. *Grace Auto has no contacts with California whatsoever and, thus, is not subject to general jurisdiction.*

The record clearly does not support the exercise of general jurisdiction over Grace Auto. Grace Auto is incorporated in Arizona, has its principal place of business in Arizona, and has never maintained any businesses, headquarters, distributors, offices, dealerships, or financing services in California or appointed an agent to receive service of process in California. (Hirst Decl. ¶¶ 7, 10.) In fact, Grace Auto has no contacts, relationships, sales, advertising, property, or other activities with or within California. (Hirst Decl., ¶¶ 10-23.) Grace Auto is simply an Arizona car dealership that offers a limited warranty program which is valid only at the Arizona dealership that sold the vehicle. (Hirst Decl. ¶ 8.) In fact, plaintiff executed a Retail Installment Contract and Security Agreement in Arizona on April 5, 2007 when she purchased the subject vehicle from the Grace Auto. (Hirst Decl. ¶ 24-26, and Exhibits A attached thereto.)

Based on the foregoing, it is clear that Grace Auto has not conducted any activities whatsoever in California, let alone sufficient activities such that it established a "physical presence" in California. As such, the Court must conclude that there is no general jurisdiction over Grace Auto.

### 3. *Grace Auto played no role in the instant action and, thus, is not subject to specific jurisdiction.*

Plaintiff alleges unfair or illegal debt collection activity in connection with the car she purchased from Grace Auto; however, the record establishes that Grace Auto did not play any role in the alleged debt collection activity.

In order to exercise personal jurisdiction over a foreign corporation for another defendant's activities in the forum state, plaintiff must establish an agency relationship between the foreign corporation and the individual defendant. E.g., Magnecomp Corp. v. Athene Co., Ltd., 209 CA3d 526, 536–537 (1989). However, as established above, Grace Auto and Grace Finance are separate corporate entities. The only entity that had the right to collect on the subject car note was Grace Finance. As indicated on the Retail

Installment Contract executed by plaintiff on April 5, 2007, Grace Auto assigned the car loan to Grace Finance on the day of the purchase. (Hirst Decl. ¶¶ 8, 24.) In fact, Grace Auto did not and has never participated in, supervised, controlled, or engaged in the collection of outstanding debts and/or payments owed to Grace Finance, including the note owed by plaintiff in the above-entitled action. (Hirst, Decl. ¶ 30.) Moreover, defendant John Anderson is not an employee, agent, servant, partner, joint venturer, or independent contractor of Grace Auto. (Hirst Decl. ¶ 29.) In other words, Grace Auto has no connection to, let alone control over, John Anderson and his alleged acts in California.

Additionally, it should be noted that at the time she purchased the subject vehicle, plaintiff listed her address as 3055 S. Mandy Street, Mesa, Arizona. (Hirst Decl. ¶ 26.) The fact that plaintiff may have subsequently moved to California does not give rise to general jurisdiction (or specific jurisdiction) over Grace Auto. Unilateral activity by plaintiff or other persons over whom the nonresident defendant has no control do not themselves satisfy the "purposeful availment" requirement. <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 US 408, 417 (1984).

In short, after it assigned the car loan to Grace Finance, Grace Auto's only relationship to plaintiff was through the limited warranty. As noted above, the warranty was only valid at the Arizona dealership that sold plaintiff her car (i.e., the Chandler, Arizona dealership.) Since plaintiff's claims do not arise from or relate to the limited warranty, and since Grace Auto played no role in the alleged debt collection activities, there is simply no basis for exercising specific jurisdiction over Grace Auto.

**D.   Grace Finance Does Not Have Sufficient Minimum Contacts with California to Support the Exercise of General or Specific Personal Jurisdiction.**

As discussed herein and in Robert Hirst's Declaration, Grace Finance contacts with California are neither substantial or continuous and systematic such that general jurisdiction exists. Furthermore, Grace Finance did not purposefully avail itself of the benefits and protections of California's laws. Moreover, it would be unreasonable to

exercise general or specific jurisdiction over Grace Finance where it would not have had contact with California but for plaintiff moving to this state after defaulting on her car loan.

### 1.    *Grace Finance's contacts with California are not "substantial or continuous and systematic."*

Like Grace Auto, Grace Finance is incorporated in Arizona, has its principal place of business in Arizona, and has never maintained any businesses, headquarters, distributors, offices, dealerships, or financing services in California or appointed an agent to receive service of process in California. (Hirst Decl. ¶¶ 7, 10.) Grace Finance has no contacts, relationships, sales, advertising, property, or other activities with or within California. (Hirst Decl., ¶¶ 10-23.) Grace Finance is simply the financing division of Grace Auto. (Hirst Decl. ¶ 8.) In fact, Grace Auto entered into the Retail Installment Contract and Security Agreement in Arizona on April 5, 2007 and subsequently assigned it to Grace Finance in Arizona. (Hirst Decl. ¶ 24-26, and Exhibits A attached thereto.)

Based on the foregoing, it is clear that Grace Finance has not conducted established a "physical presence" in California. As such, the Court must conclude that there is no general jurisdiction over Grace Auto.

### 2.    *Grace Finance played no role in the instant action and, thus, is not subject to specific jurisdiction.*

The only "contacts" Grace Finance has with California result from the fact that plaintiff made the unilateral decision to move to California after defaulting on her loan. (Hirst Decl., ¶¶ 26-28.) As established above, unilateral decisions by plaintiffs over whom defendants have no control is insufficient to establish specific jurisdiction. Furthermore, when Grace Finance used the services of defendant John Anderson for the sole purpose of locating plaintiff and/or the subject car. (Hirst Decl., ¶ 27.) At the time Grace Finance contracted with Mr. Anderson to locate plaintiff, he operated his business from the State of Georgia. (Hirst Decl., ¶ 27.) Grace Finance did not control, supervise, or direct the details, manner, and/or methods Mr. Anderson used to locate plaintiff and/or

1    the subject vehicle. (Hirst Decl., ¶ 27.) As such, Mr. Anderson was merely an

2    independent contractor and any acts he may have allegedly committed in or directed at

3    California residents, such as plaintiff, are insufficient to establish specific jurisdiction over

4    Grace Finance. See e.g., Magnecomp Corp. v. Athene Co., Ltd., supra, 209 CA3d at 536–

5    537 (establishing that the acts of an agent may be imputed to principal for purposes of

6    establishing specific jurisdiction).

7        Finally, it would be unreasonable to subject Grace Finance, and especially Grace

8    Auto, to jurisdiction in California where neither defendant maintains or operates any

9    businesses, owns any property, conducts any advertising, or has appointed a registered

10   agent for service of process. Both corporations would suffer a great burden, expense, and

11   inconvenience of transporting officers, representatives, fact witnesses, and documents to

12   California during the discovery process and for trial purposes

13                                       **IV.**

14   **ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE FOR**

15                            **IMPROPER VENUE**

16        Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to bring a

17   motion to dismiss on the basis of improper venue. This defense must be asserted as part of

18   a defendant's first responsive pleading, or brought by separate motion as a defendant's first

19   response, or it is waived under Rule 12(h)(1). Venue in federal courts is governed entirely

20   by statute. See Leroy v. Great Western United Corp., 443 U.S. 173, 181 (1979). The

21   venue rules appear in the general venue statute (28 U.S.C. § 1391), in special venue

22   statutes, and in the improper venue and change of venue provisions (28 U.S.C. §§ 1404

23   and 1406).

24        There are two grounds on which venue may be changed: (1) where venue is

25   improper, a court must dismiss or transfer under 28 U.S.C. § 1406; (2) where venue is

26   proper, the court may transfer to another district, for convenience, pursuant to 28 U.S.C. §

27   1404. In either case, those districts in which venue would be proper are determined by 28

28   U.S.C. § 1391, or by the special venue statutes that may apply for given causes of action.

             C 08-01380 SC

1  No special venue statutes apply in the instant case.

2  The general federal venue statute is 28 U.S.C. § 1391. For cases arising under
3  federal law, such as the instant case, § 1391(b) allows that venue is proper in a district
4  where: (1) any defendant resides if all defendants reside in the same state; (2) a
5  "substantial part of the events or omissions" on which a claim is based occurred, or a
6  "substantial part of the property" that is the subject of the action is located; or (3) any
7  defendant "may be found," if there is no district in which the action may otherwise be
8  brought (under the first two prongs).

9  If a plaintiff commences an action in a district in which venue is not proper, the
10  court will (upon timely motion) dismiss the action for improper venue or transfer the case
11  to any district where it could have been brought "if it be in the interest of justice." 28
12  U.S.C. § 1406(a); see e.g., District No. 1, Pacific Coast District v. Alaska, 682 F.2d 797,
13  799 (9th Cir.1982).

14  **A.    Not All of the Defendants Reside in California.**

15  In this case, the record clearly shows that not all of the defendants reside in the state
16  of California. Byrider Franchising resides and is domiciled in the State of Indiana. Grace
17  Auto and Grace Finance reside and are domiciled in the State of Arizona. As such, the
18  provisions of 28 U.S.C. § 1391(b)(1) are not met here.

19  **B.    The Eastern District of California is the Proper Venue Because a**
20  **Substantial Part of the Events Giving Rise to Plaintiff's Claims**
21  **Occurred in Stanislaus County.**

22  Under 28 U.S.C. § 1391(b)(2), venue would be proper in the Northern District of
23  California if a substantial part of the events or omissions" on which a claim is based
24  occurred, or a "substantial part of the property" that is the subject of the action is located.
25  In this case, a substantial part of the events or omissions allegedly occurred in Modesto,
26  California, which is located in Stanislaus County. (Complaint, ¶¶ 3 and 31.) Stanislaus
27  County is located in the Eastern District of California.
28  ///

1   Thus, if the Court should find that personal jurisdiction exists over any of the

2   moving defendants, venue should be transferred to the Eastern District of the United

3   States District Court of California.

4   ## V.

5   ## IF PERSONAL JURISDICTION EXISTS AND VENUE IS PROPER, THEN

6   ## THE COURT MUST COMPEL ARBITRATION AND STAY PROCEEDINGS

7   If the Court concludes that personal jurisdiction exists over one or more of these

8   specially-appearing defendants and venue is proper in the Northern District, then the

9   Court must compel arbitration and stay proceedings pursuant to the arbitration agreement

10  contained in the Retail and Installment Contract and Security Agreement executed by

11  plaintiff on or about April 5, 2007.  (Hirst Decl., ¶¶ 24 and 25.)

12  A party who wishes to arbitrate a dispute first brought in a district court can seek a

13  stay of the court proceedings under the Federal Arbitration Act ("FAA"), while seeking a

14  concurrent order under the FAA compelling arbitration.  9 U.S.C. §§ 3, 4.  Sink v. Aden

15  Enterprises, Inc., 352 F.3d 1197, 1201 (9th Cir. 2003).  The district court's role under the

16  FAA is limited to determining the following: (1) whether the arbitration agreement is

17  valid and enforceable and (2) whether the claims asserted are within the purview of the

18  arbitration agreement.  Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126,

19  1130 (9th Cir. 2000).  If the answer is affirmative on both counts, then the FAA requires

20  the court to enforce the arbitration agreement in accordance with its terms.  Id.

21  Furthermore, the FAA evinces a "liberal federal policy favoring arbitration

22  agreements."  Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24

23  (1985).  It is well established "that where the contract contains an arbitration clause, there

24  is a presumption of arbitrability."

25  ## A.    The Arbitration Agreement is Valid and Enforceable.

26  To evaluate the validity of an arbitration agreement, federal courts "'should apply

27  ordinary state-law principles that govern the formation of contracts.'"  Ingle v. Circuit City

28  Stores, Inc., 328 F.3d 1165, 1170 (9th Cir.2003) (quoting First Options of Chi., Inc. v.

1  Kaplan, 514 U.S. 938, 944 (1995)). Thus, contract defenses generally applicable under

2  state law, including fraud, duress, or unconscionability may be asserted to invalidate

3  arbitration agreements. Bischoff v. DirectTV, Inc., 180 F.Supp.2d 1097, 1102 (C.D. Cal.

4  2002). In this case, the law of both the forum state (California) and the state in which the

5  contract was made (Arizona) provide that an arbitration agreement is unenforceable if it is

6  both procedurally unconscionable (i.e., containing terms that are outside the reasonable

7  expectations of the parties) and substantively unconscionable (i.e. containing terms that

8  are overly harsh or one-sided). See e.g., Armendariz v. Foundation Health Psych. Servs.,

9  24 Cal.4th 83, 114 (2000) (setting forth California law); Darner Motor Sales, Inc. v.

10  Universal Underwriters Ins. Co., 140 Ariz. 383, 392 (1984) (setting forth Arizona law).

11                    *1.    The arbitration agreement is not procedurally unconscionable.*

12          An adhesion contract is generally considered procedurally unconscionable. "A

13  contract of adhesion, generally speaking, is " 'a standardized contract, which, imposed and

14  drafted by the party of superior bargaining strength, relegates to the subscribing party only

15  the opportunity to adhere to the contract or reject it.'" Fittante v. Palm Springs Motors,

16  Inc., 105 Cal.App.4th 708, 721 (2004); Harrington v. Pulte Home Corp., 211 Ariz. 241,

17  248-253 (2005). While the purchase contract at issue here may be described as

18  "standardized" there is no evidence that plaintiff was presented with the contract on a

19  "take it or leave it" basis. Even if the contract could be fairly described as an adhesion

20  contract, "describing a contract as one of adhesion does not . . . affect its enforceability."

21  Fittante, supra, 105 Cal.App.4th at 722. An adhesion contract remains fully enforceable

22  unless "(1) the provision falls outside the reasonable expectations of the weaker party, or

23  (2) the provision is unduly oppressive or unconscionable." Id. Here, plaintiff was not the

24  weaker party. She could have walked away and decided not to buy the car.

25                    *2.    The arbitration agreement is not substantively unconscionable.*

26          An arbitration agreement is substantively unconscionable if it is unfairly one-sided,

27  or, in other words, "lacks mutuality." Armendariz v. Foundation Health Psychcare

28  Services, Inc., 24 Cal.4th  83,99 (2000)(to be enforceable, agreement must possess a

1  "modicum of bilaterality"). An agreement need not mandate the arbitration of all claims

2  between the parties. Id. at 120. It lacks "mutuality" *only* if it requires "one contracting

3  party, but not the other, to arbitrate all claims arising out of the same transactions or

4  occurrences." Id. (holding the agreement before it was unconscionable because it required

5  employees, but not employers, to arbitrate unlawful termination claims). In this case, the

6  arbitration agreement applies to all parties and to all disputes arising from the purchase

7  and financing of the car.

        **3.**    *Plaintiff agreed to arbitrate.*

9        Plaintiff may argue that the subject arbitration agreement is unenforceable because

10  she did not initial the page that contained the arbitration provision. Any opposition based

11  on this argument would fail.

12        The Ninth Circuit has recognized that "[w]hile the FAA 'requires a writing, it does

13  not require that the writing be signed by the parties.'" Nghiem v. NEC Elec., Inc., 25 F.3d

14  1437, 1439 (1994) (citation omitted). Furthermore, under both California and Arizona

15  law, a party can be bound by an arbitration clause even if he or she failed to read or

16  understand it - so long as the clause is not procedurally and substantively unconscionable.

17  Bolanos v. Khalatian, 231 Cal.App.3d 1586, 1590 (1991); Harrington v. Pulte Home

18  Corp., 211 Ariz. 241, 247 (2005).

19        Although the plaintiff in the instant case failed to initial the box located at the

20  bottom of the arbitration provision, she signed the contract itself. Directly above

21  plaintiff's signature, the contract states in bold, capital letters: "This contract contains an

22  arbitration of disputes provision which governs certain disputes between the parties."

23  (See Page 2 of Exhibit A, attached to Hirst Decl.) Furthermore, plaintiff signed a Buyer's

24  Statement of Understanding wherein she initialed the box for item number eight, which

25  states: "I understand that the Contract provides for arbitration and that I, in certain cases,

26  waive the right to a trial by jury for all claims covered by the arbitration provision." (See

27  Page 1 of Exhibit B, attached to Hirst Decl.)

28  / / /

Given that the subject arbitration agreement is neither procedurally or substantively unconscionable and plaintiff signed both the underlying contract and a supplemental Statement of Understanding, it is irrelevant that plaintiff did not initial the box located below the arbitration provision. Plaintiff should be bound by the terms of the arbitration agreement.

**B.    Plaintiff's Claims Fall within the Purview of the Arbitration Agreement.**

"[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986); Comedy Club, Inc. v. Improve West Associates, 514 F.3d 833, 842 (9th Cir. 2007).

In this case, the arbitration agreement unequivocally covers every possible type of dispute that may arise between a car buyer and the seller and/or finance company. The first paragraph of the arbitration agreement provides that any "Dispute" arising between the parties shall be resolved by "binding arbitration." (See Exhibit A, page 4.) The second paragraph of the agreement defines "dispute" as "any action, dispute, claim, or controversy of any kind arising out, in connection with, or in any way related to the sale of the Vehicle, financing . . . collection . . . or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties." (See Exhibit A, page 4.) The second paragraph of the agreement further states that the term "dispute" includes without limitation "claims under federal or state consumer protection laws; claims in tort or contract; claims under statutes or common law . . ." (See Exhibit A, page 4.)

Clearly, plaintiff's claims against these specially-appearing defendants fall within the purview of the arbitration agreement. As such, the Court must order plaintiff to arbitrate her claims pursuant to the terms of the agreement.

/ / /

/ / /

/ / /

**C.    Byrider Franchising Does Not Object to Binding Arbitration.**

Although Byrider Franchising is not a signatory to the Retail Installment Contract and Security Agreement, it does not object to binding arbitration should the court find that it can properly exercise personal jurisdiction over it.  (Higgins Decl., ¶¶ 21-22.)

## VI.

## CONCLUSION

Based on the foregoing, specially-appearing defendants BYRIDER FRANCHISING, GRACE AUTO, and GRACE FINANCE respectfully request that the Court grant the instant motion to dismiss for lack of personal jurisdiction or transfer venue to the Eastern District of California.  Alternatively, if the Court concludes that personal jurisdiction exists and venue is proper, then it is hereby requested that the Court compel arbitration and stay proceedings.

DATED: May 27, 2008                     **MURCHISON & CUMMING, LLP**

                                        By: _____
                                            Michael B. Lawler
                                            Kasey C. Townsend
                                            Anastasia K. Mazzella
                                            Attorneys for Specially Appearing
                                            Defendants, BYRIDER FRANCHISING,
                                            INC. (erroneously sued and served as J.D.
                                            Byrider, Inc.), Grace Auto, Inc. dba J.D.
                                            Byrider (erroneously sued as JD Byrider of
                                            Chandler), and Grace Finance, Inc. dba
                                            CNAC (erroneously sued as CarNow
                                            Acceptance Company)

J:\AKM\JD BYRIDER_27976\MTN-DISMISS-12(b)(2)-draft

1

## PROOF OF SERVICE

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3    At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 801
4 South Grand Avenue, 9th Floor, Los Angeles, California 90017-4613.

5    On May 27, 2008, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL**
6 **JURISDICTION PURSUANT TO F.R.C.P. RULE 12(B)(2), OR IN THE ALTERNATIVE, TRANSFER VENUE, OR COMPEL ARBITRATION AND STAY PROCEEDINGS;**
7 **MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

8
### SEE ATTACHED LIST
9

**BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the
10 persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with Murchison
11 & Cumming's practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the
12 ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.
13

**BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement
14 of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address mwahlquist@murchisonlaw.com to the persons
15 at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was
16 unsuccessful.

17    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar
18 of this Court at whose direction the service was made.

19    Executed on May 27, 2008, at Los Angeles, California.

20

21                                             _____

22                                             Marian R. Wahlquist

23

24

25

26

27

28

C 08-01380 SC

1

2

**SERVICE LIST**
**Jessica Hartung vs. JD Byrider, Inc., JD Byrider of Chandler, CarNow Acceptance
Company, John Anderson and T-Mobile USA, et al,**

3     Jeremy Scott Golden                          Attorneys for Plaintiff, Jessica Hartung
      Law Offices of Eric F. Fagan
4     2300 Boswell Road
      Suite 211
5     Chula Vista, CA  91914
      Telephone: 619-656-6656
6     Facsimile: 775-898-5471
      Email: jeremy@efaganlaw.com

7
      Eric F. Fagan                                Attorneys for Plaintiff, Jessica Hartung
8     Law Offices of Eric F. Fagan
      2220 Otay Lakes Road
9     Suite 502-84
      Chula Vista, CA  91915
10    Telephone: 619-656-6656
      Facsimile: 775-898-5471
11    Email: efagan@efaganlaw.com

12    Jason A. Yurasek                             Attorneys for Defendant, T-Mobile USA,
      Perkins Coie LLP                             Inc.
13    Four Embarcadaro Center
      Suite 2400
14    San Francisco, CA  94111
      Telephone: 415-344-7021
15    Facsimile: 415-344-7221
      Email:  jyurasek@perkinscoie.com
16

17

18

19

20

21

22

23

24

25

26

27

28

C 08-01380 SC

1

## PROOF OF SERVICE

2 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3     At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801
4 South Grand Avenue, 9th Floor, Los Angeles, California 90017-4613.

5     On May 27, 2008, I served true copies of the following document(s) described as **NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL**
6 **JURISDICTION PURSUANT TO F.R.C.P. RULE 12(B)(2), OR IN THE ALTERNATIVE, TRANSFER VENUE, OR COMPEL ARBITRATION AND STAY PROCEEDINGS;**
7 **MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

8

### SEE ATTACHED LIST

9

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the
10 persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Murchison
11 & Cumming's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the
12 ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

13

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement
14 of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address mwahlquist@murchisonlaw.com to the persons
15 at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was
16 unsuccessful.

17     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar
18 of this Court at whose direction the service was made.

19     Executed on May 27, 2008, at Los Angeles, California.

20

21

22 Marian R. Wahlquist

23

24

25

26

27

28

C 08-01380 SC

**SERVICE LIST**
**Jessica Hartung vs. JD Byrider, Inc., JD Byrider of Chandler, CarNow Acceptance
Company, John Anderson and T-Mobile USA, et al,**

| | |
|---|---|
| Jeremy Scott Golden<br>Law Offices of Eric F. Fagan<br>2300 Boswell Road<br>Suite 211<br>Chula Vista, CA 91914<br>Telephone: 619-656-6656<br>Facsimile: 775-898-5471<br>Email: jeremy@efaganlaw.com | Attorneys for Plaintiff, Jessica Hartung |
| Eric F. Fagan<br>Law Offices of Eric F. Fagan<br>2220 Otay Lakes Road<br>Suite 502-84<br>Chula Vista, CA 91915<br>Telephone: 619-656-6656<br>Facsimile: 775-898-5471<br>Email: efagan@efaganlaw.com | Attorneys for Plaintiff, Jessica Hartung |
| Jason A. Yurasek<br>Perkins Coie LLP<br>Four Embarcadaro Center<br>Suite 2400<br>San Francisco, CA 94111<br>Telephone: 415-344-7021<br>Facsimile: 415-344-7221<br>Email: jyurasek@perkinscoie.com | Attorneys for Defendant, T-Mobile USA, Inc. |

C 08-01380 SC