Michael B. Lawler (SBN 50972)
Kasey C. Townsend (SBN 152992)
Anastasia K. Mazzella (SBN 245201)
**MURCHISON & CUMMING, LLP**
2010 Crow Canyon Place, Suite 380
San Ramon, California 94583
Telephone: (925) 365-3170
Facsimile: (925) 365-3180
E-Mail:   ktownsend@murchisonlaw.com
          mlawler@murchisonlaw.com
          amazzella@murchisonlaw.com

Attorneys for Specially-Appearing Defendants, BYRIDER FRANCHISING, INC. (erroneously sued and served as J.D. Byrider, Inc.), Grace Auto, Inc. dba JD Byrider (erroneously sued as JD Byrider of Chandler), and Grace Finance, Inc. dba CNAC (erroneously sued as CarNow Acceptance Company)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA HARTUNG, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>J.D. BYRIDER, INC.; JD BYRIDER OF CHANDLER; CARNOW ACCEPTANCE COMPANY; JOHN ANDERSON; and T-MOBILE USA, INC. and DOES 1 through 10 inclusive,<br><br>Defendants. | CASE NO. C 08-01380 SC<br><br>**DECLARATION OF ROBERT HIRST IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(b)(2), OR IN THE ALTERNATIVE, TRANSFER VENUE OR COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>[Filed Concurrently with Motion to Dismiss and Declaration of Jeffrey Higgins]<br><br>**Assigned to Hon. Samuel Conti**<br><br>Date :<br>Time;<br>Dept.:<br><br>Action Filed:   March 11, 2008<br>Trial Date:     None Set |

I, ROBERT J. HIRST, declare that the foregoing is true and correct:

/ / /

1. I am a Co-Owner and the President/Managing Partner of GRACE AUTO INC., dba J.D. BYRIDER (sued erroneously as "J.D. Byrider of Chandler"), and GRACE FINANCE, INC., dba CNAC (sued erroneously as "Carnow Acceptance Company"), defendants in the above-entitled action. I have been the Co-Owner and President/Managing Partner of GRACE AUTO and GRACE FINANCE since 2001. My authority in this case is limited to specially appearing on behalf of GRACE AUTO and GRACE FINANCE on this motion and for no other purpose. I have reviewed GRACE AUTO and GRACE FINANCE's business and financial records, which were generated and kept in the normal course of business. I have also reviewed the pleadings and other documents related to this lawsuit. As Co-Owner and President/Managing Partner, I am familiar with the usual business practices and customs of GRACE AUTO and GRACE FINANCE and have personal knowledge of the facts set forth herein.

2. I make this declaration in support of specially appearing defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or in the alternative, Motion to Transfer Venue and/or Compel Arbitration and Stay Proceedings.

3. GRACE AUTO and GRACE FINANCE were served with summons and complaint in the above-entitled action at their corporate office in Chandler, Arizona on April 9, 2008 by a process server.

4. On or about April 10, 2001, I, along with my business partner Archie H. Wright, purchased a "J.D. Byrider" franchise from Byrider Franchising, Inc. ("Byrider Franchising, or "franchisor").

5. Per the Franchise Agreement, the "J.D. Byrider" franchise consists of two separate but inter-related businesses or "co-franchises:" GRACE AUTO (dba "J.D. Byrider") is a used-car dealership and GRACE FINANCE (dba "CNAC") is the financing company that provides financing to GRACE AUTO's customers.

6. GRACE AUTO and GRACE FINANCE were incorporated as separate corporate entities in the State of Arizona in April of 2001.

///

7. At all times relevant to this action, the headquarters and principal place of business for GRACE AUTO and GRACE FINANCE have been located in Arizona. The corporate offices of GRACE AUTO and GRACE FINANCE are located in the same building at 1455 N. Arizona Ave, Chandler, AZ 95225. GRACE AUTO operates two car dealerships in Arizona located at the following addresses: 1455 N. Arizona Ave, Chandler, AZ 85225 and 1005 N. Scottsdale Road, Scottsdale, AZ 85257. GRACE AUTO and GRACE FINANCE have never maintained an office or dealership outside of Arizona.

8. GRACE AUTO and GRACE FINANCE are independent corporate entities. GRACE AUTO sells automobiles pursuant to a "Retail Installment Contract and Security Agreement," which it then assigns to GRACE FINANCE. GRACE FINANCE closes the loan with the customer and holds and collects on the note. Thereafter, the only connection or relationship GRACE AUTO has with its customers is through a limited warranty for mechanical repairs. The limited warranty between is valid only at the Arizona dealership that sold the automobile.

9. Since their incorporation, GRACE AUTO and GRACE FINANCE have had separate employees, payroll, checkbooks, and managers. GRACE AUTO and GRACE FINANCE file separate tax returns in the State of Arizona and maintain separate corporate minutes. GRACE AUTO and GRACE FINANCE have never been general or special agents, alter egos, joint venturers, partners, or employees of one another.

10. GRACE AUTO and GRACE FINANCE have never maintained any businesses, headquarters, distributors, offices, dealerships, or financing services in California. GRACE AUTO and GRACE FINANCE have never been residents of California and have never appointed an agent to receive service of process in the State of California.

11. GRACE AUTO and GRACE FINANCE are not and have never been incorporated in the State of California or qualified, licensed, or registered to do business in the California. GRACE AUTO and GRACE FINANCE have never had any subsidiaries

incorporated or qualified, licensed, or registered to do business in California. GRACE AUTO and GRACE FINANCE have never been partners with any resident or entity doing business in California. GRACE AUTO and GRACE FINANCE have never had any ownership, business, corporate, partnership, or joint venture interest in any entity in the State of California, including other defendants identified in the Complaint.

12. The employees, servants, agents, officers, and/or directors of GRACE AUTO and GRACE FINANCE have always been domiciled in or residents of Arizona. GRACE AUTO and GRACE FINANCE have never had any employees, servants, agents, officers, and/or directors residing or domiciled in California.

13. GRACE AUTO and GRACE FINANCE have never maintained any bank accounts in California. GRACE AUTO and GRACE FINANCE have never owned, leased, rented, controlled, or maintained any real or personal property or other tangible assets in the State of California. GRACE AUTO and GRACE FINANCE have never paid taxes in California.

14. GRACE AUTO and GRACE FINANCE have never maintained or operated any branch offices or comparable facilities in California, and they have never maintained any telephone listings or mailing addresses in California.

15. GRACE AUTO and GRACE FINANCE have never sold automobiles or provided services in California. GRACE AUTO and GRACE FINANCE have never directed or solicited sales or services to the residents of California. In fact, since the limited warranty offered by GRACE AUTO is valid only at the Arizona dealership that sold the automobile; thus, GRACE AUTO only directs its sales and services to Arizona residents.

16. GRACE AUTO and GRACE FINANCE have never advertised in California or directed any of their advertising toward California residents, nor do they advertise in any publications directed primarily toward California residents. GRACE AUTO and GRACE FINANCE have never published names or trademarks in California.

///

17. GRACE AUTO and GRACE FINANCE operate a website which merely allows potential customers to apply for a car loan online (www.jdapprovesu.com). The home page states that the nearest local dealerships are located at: 1455 N. Arizona Ave, Chandler, AZ 85225 and 1005 N. Scottsdale Road, Scottsdale, AZ 85257. GRACE AUTO and GRACE FINANCE accept online applications from Arizona residents only. If an individual who resides outside Arizona submits an online application, GRACE AUTO will refer that person to the J.D. Byrider franchise that is closest to the applicant, or if there is no J.D. Byrider franchise near the applicant, GRACE AUTO responds that it cannot process the application because the applicant resides outside the area serviced by the Arizona dealerships.

18. GRACE AUTO and GRACE FINANCE are not in business with or affiliated with any other J.D. Byrider franchise that may be domiciled or doing business in California. GRACE AUTO and GRACE FINANCE do not have any business contracts, activities, or relationships with, or within, the State of California.

19. GRACE AUTO and GRACE FINANCE do not and have never engaged in any persistent course of conduct in the State of California.

20. GRACE AUTO and GRACE FINANCE have never held a board of directors, board of officers, shareholders, or other official meeting in California. GRACE AUTO and GRACE FINANCE have never applied for, received, or maintained any professional licenses from any regulatory agency of the State of California. GRACE AUTO and GRACE FINANCE do not participate in any trade shows in California and have never attended any business conferences or similar meetings in California.

21. GRACE AUTO and GRACE FINANCE do not and have never entered into any contracts with a California resident or entity, the terms of which were to be performed, in whole or in part, in California.

22. GRACE AUTO and GRACE FINANCE do not and have never entered into any contracts with persons or business entities domiciled or residing in California to act on their behalf with respect to marketing, distribution, sales, or service.

23. GRACE AUTO and GRACE FINANCE have never been a party to any lawsuit filed in the State of California, with the exception of the present action.

24. A true and correct copy of the "Retail Installment Contract and Security Agreement" ("Contract") signed and executed by plaintiff on April 5, 2007, is attached hereto as **Exhibit A**. A true and correct copy of the "Buyer's Statement of Understanding" executed by plaintiff on April 5, 2007 is attached hereto as **Exhibit B**. The Contract and Buyer's Statement are business records of GRACE AUTO and GRACE FINANCE. I have maintained these documents since their execution in the regular course of business.

25. The Contract contains a mandatory arbitration provision wherein the parties (the buyer, Grace Auto, and the seller's assignee – i.e., Grace Finance) agree to resolve "any dispute" with binding arbitration. Plaintiff did not initial the arbitration provision of the Agreement; however, plaintiff initialed and signed the arbitration provision in the Buyer's Statement of Understanding, which plaintiff executed at the time of sale on April 5, 2007, indicating that she understood that all disputes are subject to binding arbitration.

26. At the time GRACE AUTO sold plaintiff a vehicle at its Arizona dealership on or about April 5, 2007, plaintiff listed her address as "3055 S. Mandy Street, Mesa, Arizona." Thus, at the time plaintiff purchased the subject vehicle, GRACE AUTO and GRACE FINANCE had no reason to expect that the sale of a vehicle in Arizona would have consequences in the State of California.

27. Based on my review of GRACE FINANCE's corporate records, plaintiff stopped making payments on her loan shortly after she purchased the subject vehicle. In late 2007, GRACE FINANCE suspected, but did not know for certain, that plaintiff had moved out of the State of Arizona. In or about January 2008, GRACE FINANCE hired a "skip tracer" named John Anderson to locate plaintiff and the subject vehicle so that GRACE FINANCE could initiate repossession. At the time GRACE FINANCE engaged Mr. Anderson's services, Mr. Anderson operated his business from the State of Georgia. GRACE FINANCE did not control, supervise, or direct the details, manner, and/or methods Mr. Anderson used to locate plaintiff and/or the subject vehicle.

28. On or about February 1, 2008, plaintiff contacted GRACE FINANCE and informed a representative that she had abandoned the subject vehicle in San Francisco, California.

29. Defendant John Anderson is not an employee, agent, servant, partner, joint venturer, or independent contractor of GRACE AUTO. GRACE AUTO never hired, retained, or exercised any supervisory control over John Anderson. GRACE AUTO never entered into any contract with John Anderson. GRACE AUTO had no contact or association with John Anderson. GRACE AUTO never had a business, financial, or other relationship with John Anderson. GRACE AUTO never purchased any debts or liabilities of John Anderson. GRACE AUTO never received any funds or monies from John Anderson or any person related to or in business with John Anderson. GRACE AUTO never paid John Anderson any type of fee or compensation for his services.

30. GRACE AUTO did not and has never participated in, supervised, controlled, or engaged in the collection of outstanding debts and/or payments owed to GRACE FINANCE, including the note owed by plaintiff in the above-entitled action.

31. GRACE AUTO and GRACE FINANCE deny plaintiff's allegations pled in the Complaint.

32. GRACE AUTO and GRACE FINANCE would suffer a great burden, expense, and inconvenience of transporting officers, representatives, fact witnesses, and documents to California during the discovery process and for trial purposes.

33. GRACE AUTO and GRACE FINANCE do not and have never consented to the jurisdiction of the United States District Courts of California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed May 22, 2008, at Chandler, Arizona.

ROBERT J. HIRST

**EXHIBIT A**

| RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT | Seller | Grace Auto Inc. dba JD Byrider<br>1455 N. Arizona Ave.<br>Chandler, AZ 85225 | Buyer JESSICA R HAVERTY<br>3055 S MANDY ST<br>MESA, AZ 85212-2837 |
|---|---|---|---|
| No. C3550<br>Date 04/05/07 | | "We" and "us" mean the Seller above, its successors and assigns. | "You" and "your" mean each Buyer above, and guarantor, jointly and individually. |

**SALE:** You agree to purchase from us, on a time basis, subject to the terms and conditions of this contract and security agreement (Contract), the Motor Vehicle (Vehicle) and services described below. The Vehicle is sold in its present condition, together with the usual accessories and attachments.

Description of Motor Vehicle Purchased  
Year 99  Make PONTIAC  Model GRAND AM  
VIN 1G2NE52TXXM761105  
Lic. No./Year  
☐ New ☑ Used  
Other:

Description of Trade-In

**SECURITY:** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle, together called Property, and proceeds of the Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**PROMISE TO PAY AND PAYMENT TERMS:** You promise to pay us the principal amount of $ 10073.61 , plus finance charges accruing on the unpaid balance at the rate of 23.95 % per year from today's date until maturity. Finance charges accrue on a day by day basis. After maturity, or after you default and we demand payment, we will earn finance charges on the unpaid balance at _____ % per year. You agree to pay this Contract according to the payment schedule by paying the amount stated in the Amount of Payments box in the TRUTH IN LENDING DISCLOSURES; or a greater amount. You agree that any payment made that exceeds the amount shown in the Amount of Payments box will be applied to reduce the principal amount you owe, unless you and we agree otherwise in writing. You also agree to pay the late charge shown in the TRUTH IN LENDING DISCLOSURES. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

☐ **ADDITIONAL FINANCE CHARGE:** You agree to pay an additional, nonrefundable finance charge of $ N/A that will be ☐ paid in cash. ☐ added to the Cash Price. ☐ paid proportionally with each payment.

☐ **MINIMUM FINANCE CHARGE:** You agree to pay a minimum finance charge of $ _____ if you pay this Contract in full before we have earned that much in finance charges.

**DOWN PAYMENT:** You also agree to pay, or apply to the Cash Price, on or before today's date, any cash, rebate and net trade-in value described in the ITEMIZATION OF AMOUNT FINANCED. ☑ You agree to make deferred payments as part of the cash down payment as reflected in your Payment Schedule.

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | AMOUNT FINANCED The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS The amount you will have paid when you have made all scheduled payments. | TOTAL SALE PRICE The total cost of your purchase on credit, including your down payment of $ 1000.00 |
|---|---|---|---|---|
| 23.949 % | $ 5485.89 | $ 10073.61 | $ 16159.50 | $ 16559.50 |

**Payment Schedule:** Your payment schedule will be

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 5 | | Irregular DIPS 300.00 on 04/07/07, 75.00 on 04/14/07, 75.00 on 04/21/07, 75.00 on 04/28/07, 75.00 on 05/05/07 |
| 46 | 338.25 | MONTHLY BEGINNING 05/12/07 |

**Security:** You are giving a security interest in the Motor Vehicle purchased.  
☐ **Late Charge:** If a payment is more than _____ days late, you will be charged _____.

**Prepayment:** If you pay off this Contract early, you agree to pay a minimum finance charge of $ _____ if you pay this Contract in full before we have earned that much in finance charges.
☐ If you pay off this Contract early, you will not be entitled to a refund of part of the Additional Finance Charge.

**Contract Provisions:** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

**CREDIT INSURANCE:** Credit life, credit disability (accident and health), and any other insurance coverage quoted below, are not required to obtain credit and we will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below ONLY the coverages you have chosen to purchase.

Credit Life: Insured N/A  
☐ Single ☐ Joint Prem. $ N/A   Term N/A  
Credit Disability: Insured N/A  
☐ Single ☐ Joint Prem. $ N/A   Term N/A  

**ITEMIZATION OF AMOUNT FINANCED**  
Vehicle Price (Incl. sales tax of $ 779.61 ) $ 10774.61  
Optional Service Contract,  
   Paid to: SELLER   $ 0.00  
Amount to Finance line e. (if e. is negative)   $ 0.00  
       Cash Sale Price $ 10774.61  
Manufacturer's Rebate  $ N/A  
Cash Down Payment   $ 400.00  
Deferred Down Payment $ 600.00  
   a. Total Cash/Rebate Down   $ 1000.00

Your signature below means you want (only) the insurance coverage(s) quoted above. If none are quoted, you have declined any coverages we offered.

Buyer _____ d/o/b _____ Buyer _____ d/o/b _____

**PROPERTY INSURANCE:** You must insure the Property securing this Contract. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. The collision coverage deductible may not exceed $ ____N/A____ . If you get insurance from or through us you will pay $ ____N/A____ for __N/A__ ____N/A____ of coverage.
This premium is calculated as follows:
- ☐ $ _N/A_ Deductible, Collision Coverage $ ...... N/A
- ☐ $ _N/A_ Deductible, Comprehensive Cov. $ _N/A_
- ☐ Fire-Theft and Combined Additional Coverage $ _N/A_
- ☐ ____N/A____ $ _N/A_

☐ **SINGLE-INTEREST INSURANCE:** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ _____ for _____ of coverage.

These sections apply only if this Contract involves the sale of a "used motor vehicle" and the seller is a "used motor vehicle dealer" as defined by Ariz. Rev. Stat. Ann. § 44-1261. OTHER IMPORTANT WARRANTY INFORMATION MAY BE SUPPLIED TO YOU SEPARATELY.

**IMPLIED WARRANTY OF MERCHANTABILITY:**
THE SELLER HEREBY WARRANTS THAT THIS VEHICLE WILL BE FIT FOR THE ORDINARY PURPOSES FOR WHICH THE VEHICLE IS USED FOR 15 DAYS OR 500 MILES AFTER DELIVERY, WHICHEVER IS EARLIER, EXCEPT WITH REGARD TO PARTICULAR DEFECTS DISCLOSED ON THE FIRST PAGE OF THIS AGREEMENT. YOU (THE PURCHASER) WILL HAVE TO PAY UP TO $25.00 FOR EACH OF THE FIRST TWO REPAIRS IF THE WARRANTY IS VIOLATED.

☐ **WAIVER FOR SPECIFIC DEFECTS:** Due to circumstances that are unusual to Seller's business, the Vehicle is sold with certain defects which are described below. You decided to purchase the Vehicle after being advised of the specific defects described below.

*We disclaim and you waive the implied Warranty of Merchantability described above with respect to the specific defects noted in the next paragraph. You agree to this disclaimer and waiver by signing below.*

<u>ATTENTION PURCHASER</u>: SIGN HERE <u>ONLY</u> IF THE DEALER TOLD YOU THAT THIS VEHICLE HAS THE FOLLOWING PROBLEM(S) AND THAT YOU AGREE TO BUY THE VEHICLE ON THOSE TERMS:
1.
2.
3.

Buyer _____ Date _____ Buyer _____ Date _____

**WARRANTY DISCLAIMERS:** YOU UNDERSTAND THAT WE MAKE NO IMPLIED WARRANTIES OTHER THAN THOSE DESCRIBED ABOVE. EXCEPT AS PROVIDED ABOVE AND AS REQUIRED BY LAW, WE MAKE NO IMPLIED WARRANTY OF

| | |
|---|---|
| b. Trade-In Allowance | $ 0.00 |
| c. Less: Amount owing | $ 0.00 |
| Paid to: | |
| d. Net Trade-In (b. minus c.) | $ 0.00 |
| e. Net Cash/Trade-In (a. plus d.) | $ 1000.00 |
| Down Payment (e.; disclose as $0 if negative) | $ 1000.00 |
| Final Cash Price | $ 9774.61 |
| Paid to Public Officials - Filing Fees | $ 300.00 |
| Insurance Premiums* | $ 0.00 |
| Additional Finance Charge(s), Paid to Seller | $ |
| To: Document Fee | $ 99.00 |
| To: Gap Insurance | $ 0.00 |
| To: | $ |
| To: | $ |
| Total Other Charges/Amounts Pd. to Others | $ 299.00 |
| Less: Prepaid Finance Charges | $ N/A |
| Amount Financed | $ 10073.61 |
| Finance Charge Balance | $ |
| *We may retain or receive a portion of this amount. | 5485.89 |

**BROKER FEE:** ☐ WE HAVE PAID A BROKER FEE TO _____. ☐ WE HAVE NOT PAID ANY BROKER FEES ON THIS TRANSACTION.

☐ **OPTIONAL SERVICE CONTRACT:** With your purchase of the Vehicle, you have elected to purchase a Service Contract to cover _____

This Service Contract is not required to obtain credit. This Service Contract will be in effect for _____

**ASSIGNMENT:** This Contract and Security Agreement is assigned to ~~Grace Finance Inc, dba CNAC~~ , the Assignee, phone ~~480-821-8644~~ . This assignment is made ☐ under the terms of a separate agreement. ☐ under the terms of the ASSIGNMENT BY SELLER on page 2. ☐ This assignment is made with recourse.
Seller: By _____ Date 4/05/07

**BY SIGNING BELOW BUYER AGREES TO THE TERMS ON PAGES 1 AND 2 OF THIS CONTRACT AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS CONTRACT.**

**NOTICE TO THE BUYER**
(1) DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES. (2) YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. (3) UNDER THE LAW, YOU HAVE THE RIGHT TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER CERTAIN CONDITIONS TO OBTAIN A PARTIAL REFUND OF THE FINANCE CHARGE. (4) THIS CONTRACT CONTAINS AN ARBITRATION OF DISPUTES PROVISION WHICH GOVERNS CERTAIN DISPUTES BETWEEN THE PARTIES.

THE LIABILITY INSURANCE INCLUDED IN THIS CONTRACT DOES NOT INCLUDE LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE UNLESS SUCH INSURANCE IS SPECIFICALLY DESCRIBED ABOVE.

Buyer Signature _____ 4-5-07 Date

1.
2.
3.

_____   _____
Buyer          Date          Buyer          Date

**WARRANTY DISCLAIMERS:** YOU UNDERSTAND THAT WE MAKE NO IMPLIED WARRANTIES OTHER THAN THOSE DESCRIBED ABOVE. EXCEPT AS PROVIDED ABOVE AND AS REQUIRED BY LAW, WE MAKE NO IMPLIED WARRANTY OF MERCHANTABILITY AND NO WARRANTY THAT THE VEHICLE IS FIT FOR A PARTICULAR PURPOSE. Except as provided above, you will take the Vehicle **AS IS** and **WITH ALL FAULTS.**

THE LIABILITY INSURANCE INCLUDED IN THIS CONTRACT DOES NOT INCLUDE LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE UNLESS SUCH INSURANCE IS SPECIFICALLY DESCRIBED ABOVE.

Buyer Signature _____ 4-5-07
                                              Date

Signature _____ _____
                                              Date

Seller: By _____

We are regulated by the Arizona State Banking Department. Any complaints you have concerning this Contract may be addressed to the Arizona State Banking Department, 2910 North 44th Street, Suite 310, Phoenix, Arizona 85018; Telephone (602) 255-4421.

This Contract hs been assigned to
Johnson Bank

ARIZONA RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT

ExpErA © 1995, 1996 Bankers Systems, Inc., St. Cloud, MN Form JD-RSSIMV-AZ 8/8/2005 (Rev. 0/05)

(page 1 of 2)
MOTOR VEHICLE – NOT FOR MANUFACTURED HOMES

## ADDITIONAL TERMS OF THIS CONTRACT AND SECURITY AGREEMENT

**GENERAL TERMS:** You have been given the opportunity to purchase the Vehicle and described services for the Cash Price or the Total Sale Price. The Total Sale Price is the total price of the Vehicle and any services if you buy them over time. You agreed to purchase the items over time. The Total Sale Price shown in the TRUTH IN LENDING DISCLOSURES assumes that all payments will be made as scheduled. The actual amount you will pay may be more or less depending on your payment record.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee, that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that is contrary to this provision, we will, instead, apply it first to reduce the principal balance, and when the principal has been paid in full, refund it to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You hereby authorize us to correct any clerical errors or omissions made in completing this form and other documents related to this transaction.

**PREPAYMENT:** You may prepay this Contract in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until you pay in full.

A refund of any prepaid, unearned insurance premiums may be obtained from us or from the insurance company named in your policy or certificate of insurance.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** By giving us a security interest in the Property, you represent and agree to the following:
  A. Our security interest will not extend to consumer goods unless you acquire rights to them within 10 days after we enter into this Contract, or they are installed in or affixed to the Vehicle.
  B. You will defend our interests in the Property against claims made by anyone else. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else.
  C. The security interest you are giving us in the Property comes ahead of the claim of any other of your general or secured creditors. You agree to sign any additional documents or provide us with any additional information we may require to keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
  D. You will keep the Property in your possession in good condition and repair. You will use the Property for its intended and lawful purposes. Unless otherwise agreed in writing, the Property will be located at your address listed on page 1 of this Contract. You agree to provide us with written notice at least 30 days prior to relocating to a different state than the one shown on page 1 of this Contract.
  E. You will not attempt to sell the Property (unless it is properly identified inventory) or otherwise transfer any rights in the Property to anyone else, without our prior written consent. Upon giving us this consent, you agree to pay us a $15.00 fee if you sell or otherwise transfer the Property.
  F. You will pay all taxes and assessments on the Property as they become due.
  G. You will notify us within 24 hours of any loss or damage to the Property. You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**DEFAULT:** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):
  A. You fail to make any payment under this Contract when due.
  B. You fail to do anything else you have agreed to do in this Contract.
  C. Any statement or representation you made in your credit application is untrue or incorrect.
  D. You fail to provide us with proof of employment, residence, insurance or repair to credit history within 3 business days after our written request for this information.
  E. You die, become incompetent, generally fail to pay your debts as they become due, or become the subject of a voluntary or involuntary bankruptcy proceeding.
  F. Any judgment, levy, attachment, writ of garnishment or other similar order is entered against you or the Property.
  G. Any police or governmental agency seizes or impounds the Vehicle or starts forfeiture proceedings against the Property.
  H. Any other event or circumstance occurs that causes us to deem ourselves insecure, or to believe that our prospects for payment or realization upon the Property is impaired.

Unless prohibited by law, if you default you agree to pay our costs for collecting amounts owing, including, without limitation, a reasonable amount for our cost of collection, reasonable attorneys' fees if we refer this Contract to an attorney not a salaried employee

cover what you owe us. We may sue you for those additional amounts.

By choosing any one or more of these remedies, we do not waive our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that, subject to your right to recover such property, we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above.

**NOTICE:** The following information applies if this Contract is secured by a motor vehicle, as that term may be defined by applicable Arizona law:

It is unlawful to fail to return a motor vehicle subject to a security interest within thirty days after receiving notice of default. Any notice of default we send you will be mailed to your address on this Contract. It is your responsibility to tell us your new address if it changes. Unlawful failure to return a motor vehicle subject to a security interest is a class 6 felony which for a first offense carries a maximum jail sentence of 1.5 years. The maximum jail sentence may be greater if the defendant has a prior criminal record. The court may also impose a fine of no more than $150,000.

**RETURNED CHECK CHARGE:** You agree to pay a fee of $25.00 for each check, negotiable order of withdrawal or share draft you issue in connection with this Contract that is returned because it has been dishonored.

**INSURANCE:** You agree to buy property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the PROPERTY INSURANCE section, or as we will otherwise require. You will name us as loss payee on any such policy. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as a loss payee, we may obtain insurance to protect our interest in the Property. This insurance may include coverages not required of you. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.

**OBLIGATIONS INDEPENDENT:** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:
  A. You must pay this Contract even if someone else has also signed it.
  B. We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
  C. We may release any security and you will still be obligated to pay this Contract.
  D. If we give up any of our rights, it will not affect your duty to pay this Contract.
  E. If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**WARRANTY:** Warranty information is provided to you separately.

**WAIVER: To the extent permitted by law, you agree to give up your rights to require us to do certain things. We are not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time or manner; or, (3) give notice that we intend to make, or are making, this Contract immediately due.**

**LIQUIDATED DAMAGES:** If we allow you to return the Property and cancel your obligations under the Contract, you agree that we will incur damages in an amount that is difficult for you and us to predict as of the Contract date. Unless prohibited by applicable law, you agree that we, if we allow you to return the Property and cancel your Contract obligations, may retain as damages any property and money that you used as a down payment.

| THIRD PARTY AGREEMENT |
|---|

reasonable amount of cost to collect reasonable attorneys' fees if we refer this Contract to an attorney, not a salaried employee of ours, and court costs.

If an event of default occurs as to any one of you, we may exercise our remedies against any or all of you.

**REMEDIES:** If you are in default on this Contract, we have all of the remedies provided by law and this Contract:
   A. We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges. These amounts will earn finance charges from the date you are required to pay us at the rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
   B. We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. Any amount we pay will be added to the amount you owe us and will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the PROMISE TO PAY AND PAYMENT TERMS section until paid in full.
   C. We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
   D. We may immediately immobilize, disable or take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises. We may then sell the Property and apply what we receive as provided by law to our actual and reasonable expenses and then toward your obligations.
   E. Except when prohibited by law, you are responsible for any deficiency if the proceeds from the sale of the Property do not

**THIRD PARTY AGREEMENT**
By signing below you agree to give us a security interest in the Property described in the SALE section. You also agree to the terms of this Contract, including the WAIVER section above, except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend, change this Contract, or release any party or property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

_____
Signature                  Date

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**IF YOU ARE BUYING A USED VEHICLE, THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.**

### ARBITRATION OF DISPUTES

**Mandatory Arbitration:** Unless otherwise stated in this agreement, any "Dispute" between the Parties shall, at the election of Buyer, Seller or Seller's Assignee ("the Parties"), be resolved by a neutral, binding arbitration, and not by a court of law. This procedure includes any Dispute over the interpretation, scope, or validity of this Contract, the arbitration agreement or the arbitrability of any issue, with the sole exception of the Buyer's waiver of Buyer's right to bring a class action or to participate in a class action which shall be solely determined by the appropriate court, if necessary. The arbitration procedure applies to the Parties, including their respective employees or agents, as to all matters which arise out of or relate to this Contract or are in any way connected with the purchase and sale or financing of the Property, or any resulting transaction or relationship.

**Dispute:** The term "Dispute" means any action, dispute, claim, or controversy of any kind arising out, in connection with or in any way related to the sale of the Vehicle, financing, contracts, origination, servicing, service agreements, collection, reporting, or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties. The term "Dispute," includes without limitation: claims under federal or state consumer protection laws; claims in tort or contract; claims under statutes or common law; claims at law or in equity; any other past, present or future claims, counterclaims, cross-claims, third party claims, interpleaders or otherwise.

**Facts about Arbitration:** Arbitration is a process in which a neutral arbitrator decides a dispute instead of a judge or jury. Each side has an opportunity to present some evidence to the arbitrator. A party's ability to discover things may be limited. Arbitration proceedings are private and less formal than court trials. Other rights that the Parties might have in court might not be available in arbitration. The information that can be obtained in discovery from each other or from third persons in an arbitration is generally more limited than in a lawsuit. An arbitrator issues an award. The arbitrator shall be an attorney or a retired judge and shall be selected in accordance with the applicable rules. A court may then enforce the award like a court judgment. A court rarely overturns an arbitrator's decision. You can obtain information about arbitration at the websites of the American Arbitration Association ("AAA") (www.adr.org) or the National Arbitration Forum (NAF) (www.arb-forum.com).

**Rules:** Arbitration will be conducted according to the arbitration rules of the AAA or the NAF at the election of the party filing for arbitration. The AAA rules may be obtained by mail from the AAA, Attention Customer Service Department, 335 Madison Avenue, 10th Floor, New York, New York 10017-4605 or on the internet at www.adr.org. The NAF rules may be obtained by mail from NAF, P.O. Box 50191, Minneapolis, Minnesota 55405 or on the internet at www.arb-forum.com. The arbitration will be conducted under the applicable procedures and rules of the arbitration administrator selected that are in effect on the date the arbitration is commenced unless those procedures and rules are inconsistent with this arbitration provision, in which case this arbitration provision shall govern. In the event both of the designated arbitration administrators are unable or unwilling to serve, the Parties will use the procedures and rules of the NAF and an arbitrator appointed by a court in accordance with the Federal Arbitration Act (9 U.S.C. § 1, et seq.) The arbitrator shall apply the law and the provisions of this agreement in deciding the Dispute. Unless the applicable rules provide otherwise, the arbitration decision shall be issued without a written opinion. The arbitration hearing shall be conducted in the federal judicial district in which the Contract was executed by Buyer.

**Standards and Law:** The Parties agree that the purchase of the Property involves interstate commerce and that this arbitration agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sections 1 through 16 as amended ("FAA"). The arbitrator shall strictly apply applicable substantive law and applicable statutes of limitation consistent with the FAA and shall honor claims of privilege recognized at law. Judgment upon any arbitrator's award may be entered by any court having competent jurisdiction.

**Jury Trial Waiver:** The Parties hereby agree to give up their respective rights to a trial by a court or a jury.

**Class Action Waiver:** The Parties agree to give up any right they may have to bring a class action lawsuit or class arbitration, or to participate in either as a claimant. The Parties agree to give up any right to consolidate or join any arbitration proceeding with the arbitration of others. The Parties give up the right to serve as a private attorney general in any jurisdiction in which such procedure might be permitted. To the extent the Parties are permitted to file small claims as defined in this agreement, the Parties agree that any small claim may only be brought on an individual basis and that a small claim may not be brought on a class or representative basis.

**Punitive Damage Waiver:** The Parties agree that the arbitrator shall have no authority to award punitive damages in any dispute. No arbitrator shall have the power or authority to award punitive damages.

**Fees and Costs:** If Buyer files for arbitration first, Buyer will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125 or that equal to the amount of the applicable filing fee in court, whichever is less. Seller or Seller's Assignee will pay any additional initial filing fee or case management fee. Seller or Seller's Assignee will pay the whole filing fee or case management fee if Seller or Seller's Assignee files arbitration first up to $3,500 with any additional filing fee to be apportioned according to the applicable rules. The arbitrator shall decide who shall pay any additional costs and fees according to the applicable rules. Nothing in this paragraph shall prevent Buyer from requesting that the applicable arbitration entity reduce or waive Buyer's fees, or that Seller or Seller's Assignee voluntarily pay an additional share of set fees, based upon Buyer's financial circumstances or the nature of Buyer's claim.

**Self-Help:** Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional

**Punitive Damage Waiver:** The Parties agree that the arbitrator shall have no authority to award punitive damages in any dispute. No arbitrator shall have the power or authority to award punitive damages.

**Fees and Costs:** If Buyer files for arbitration first, Buyer will pay the claimant's initial arbitration filing fees or case management fees required by the applicable rules up to $125 or that equal to the amount of the applicable filing fee in court, whichever is less. Seller or Seller's Assignee will pay any additional initial filing fee or case management fee. Seller or Seller's Assignee will pay the whole filing fee or case management fee if Seller or Seller's Assignee files arbitration first up to $3,500 with any additional filing fee to be apportioned according to the applicable rules. The arbitrator shall decide who shall pay any additional costs and fees according to the applicable rules. Nothing in this paragraph shall prevent Buyer from requesting that the applicable arbitration entity reduce or waive Buyer's fees, or that Seller or Seller's Assignee voluntarily pay an additional share of set fees, based upon Buyer's financial circumstances or the nature of Buyer's claim.

**Self-Help:** Notwithstanding this arbitration agreement, the Parties retain the right to exercise self-help remedies and to seek provisional remedies from a court, pending final determination of the dispute by the arbitrator. No Party waives the right to elect arbitration of a Dispute by exercising self-help remedies, filing suit, or seeking or obtaining provisional remedies from a court.

**Exceptions:** The Parties agree that this arbitration agreement is not applicable to "Small claims" meaning those claims which either Party are entitled to file and maintain in an appropriate small claims court or any action where the total amount in controversy is no greater than $10,000, including any claims for attorney's fees and non-monetary relief.

**Severability:** If it is determined that any term or provision in this arbitration agreement is illegal, invalid, or unenforceable, such illegality, invalidity or unenforceability shall not affect the other terms and provisions of this section. The remainder of this section shall continue in full force and effect as if the severed provision had not been included. Notwithstanding this severability provision, if a court of competent jurisdiction determines the Parties' waiver of their right to bring a class action or to participate in a class action to be illegal, invalid, or unenforceable, the Parties agree that such waiver shall not be severed and that this agreement to arbitrate shall be void in its entirety.

**Survival of Arbitration Provision:** This arbitration agreement will survive and continue in full force and effect notwithstanding cancellation, termination, amendment, payment in full, discharge in bankruptcy, or other expiration or conclusion of the Contract or any other contract or transaction between the Parties, unless otherwise agreed in writing. In addition, Buyer understands and acknowledges that the rights and responsibilities afforded to Seller under this arbitration provision survive any assignment of the Contract by Seller and that Seller can enforce this provision in the event a Dispute arises after the assignment of the Contract.

**FOR ALL DISPUTES COVERED BY THIS SECTION, THE PARTIES HAVE AGREED TO WAIVE THEIR RIGHT TO A TRIAL BY JUDGE OR JURY, THEIR RIGHT TO PARTICIPATE IN CLASS ACTIONS, AND THEIR RIGHT TO SEEK PUNITIVE DAMAGES. EXCEPT FOR DISPUTES AND CLAIMS NOT SUBJECT TO THIS ARBITRATION AGREEMENT, ARBITRATION SHALL BE IN PLACE OF ANY CIVIL LITIGATION IN ANY COURT AND IN PLACE OF ANY TRIAL BY JUDGE OR JURY.**

**THE TERMS OF THIS ARBITRATION AGREEMENT AFFECT YOUR LEGAL RIGHTS. IF YOU DO NOT UNDERSTAND ANY TERMS OF THIS PROVISION OR THE COST, ADVANTAGES OR DISADVANTAGES OF ARBITRATION, SEEK INDEPENDENT ADVICE AND/OR CONTACT THE AMERICAN ARBITRATION ASSOCIATION AT (800) 778-7879 OR THE NATIONAL ARBITRATION FORUM AT (800) 474-2371 BEFORE SIGNING THIS CONTRACT. BY SIGNING THIS CONTRACT, YOU ACKNOWLEDGE THAT YOU HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY EACH OF THE PROVISIONS, COVENANTS, STIPULATIONS AND AGREEMENTS SET FORTH ABOVE.**

Buyer's Initials _____

---

## ASSIGNMENT BY SELLER

Seller sells and assigns this Retail Installment Contract and Security Agreement, (Contract), to the Assignee, its successors and assigns, including all its rights, title and interest in this Contract, and any guarantee executed in connection with this Contract. Seller gives Assignee full power, either in its own name or in Seller's name, to take all legal or other actions which Seller could have taken under this Contract. (SEPARATE AGREEMENT: If this Assignment is made "under the terms of a separate agreement" as indicated on page 1, the terms of this assignment are described in a separate writing(s) and not as provided below.)
Seller warrants:
A. This Contract represents a sale by Seller to Buyer on a time price basis and not on a cash basis.
B. The statements contained in this Contract are true and correct.
C. The down payment was made by the Buyer in the manner stated on page 1 of this Contract and, except for the application of any manufacturer's rebate, no part of the down payment was loaned or paid to the Buyer by Seller or Seller's representatives.
D. This sale was completed in accordance with all applicable federal and state laws and regulations.
E. This Contract is valid and enforceable in accordance with its terms.
F. The names and signatures on this Contract are not forged, fictitious or assumed, and are true and correct.
G. This Contract is vested in the Seller free of all liens, is not subject to any claims or defenses of the Buyer, and may be sold or assigned by the Seller.
H. A completely filled-in copy of this Contract was delivered to the Buyer at the time of execution.
I. The Vehicle has been delivered to the Buyer in good condition and has been accepted by Buyer.
J. Seller has or will perfect a security interest in the Property in favor of the Assignee.

If any of these warranties is breached or untrue, Seller will, upon Assignee's demand, purchase this Contract from Assignee. The purchase shall be in cash in the amount of the unpaid balance (including finance charges) plus the costs and expenses of Assignee, including attorneys' fees.

Seller will indemnify Assignee for any loss sustained by it because of judicial set-off or as the result of a recovery made against Assignee as a result of a claim or defense Buyer has against Seller.

Seller waives notice of the acceptance of this Assignment, notice of non-payment or non-performance and notice of any other remedies available to Assignee.

Assignee may, without notice to Seller, and without affecting the liability of Seller under this Assignment, compound or release any rights against, and grant extensions of time for payment to be made, to Buyer and any other person obligated under this Contract.
UNLESS OTHERWISE INDICATED ON PAGE 1, THIS ASSIGNMENT IS WITHOUT RECOURSE.
WITH RECOURSE: If this Assignment is made "with recourse" as indicated on page 1, Assignee takes this Assignment with certain rights of recourse against Seller. Seller agrees that if the Buyer defaults on any obligation of payment or performance under this Contract, Seller will, upon demand, repurchase this Contract for the amount of the unpaid balance, including finance charges, due at that time.

**EXHIBIT B**



# J.D. BYRIDER

## (Co) Buyer's Statement of Understanding

The undersigned Buyer and Co-Buyer (hereinafter jointly referred to as "I") acknowledge the following:

1. I understand that I am purchasing a used vehicle and that future mechanical problems may occur. I understand that even though I may encounter such problems, I am still obligated to make my payments to CarNow Acceptance Company (CNAC). I understand that I am responsible for any repairs not covered by the J.D. Byrider Limited Warranty of the Service Agreement, if I elected to purchase the Service Agreement.

2. I understand that J.D. Byrider will assign all of its rights to the Retail Installment Contract and Security Agreement (hereinafter referred to as "Contract") dated _____ to CNAC. I further understand that CNAC may assign the Contract to a third party at some future date.

3. I understand that the Contract provides for a fee of the greater of thirty dollars ($30) or an amount equal to the actual charge by the depository institution for ANY check or item returned to CNAC by reason of non-sufficient funds or a stop-payment order.

4. I understand that if at any time I am in default under the terms of the Contract, for any reason, I am subject to all legal recourse available under law, which may include repossession of the above vehicle and/or the filing of a lawsuit. I understand that CNAC may repossess my vehicle at any time should CNAC believe that my vehicle is in danger or at risk. In the event of repossession, I understand and agree that I will be charged for CNAC's reasonable, actual repossession expenses.

5. During the term of the Contract, I understand that before I relocate out of state, I will notify CNAC or third-party assignee in writing thirty (30) days prior to moving. I further understand that under NO condition can this vehicle be taken outside of the Continental United States during the term of this Contract.

6. During the term of the Contract, I understand that I must maintain insurance coverage with a five hundred ($500.00) maximum deductible for loss and physical damage on said vehicle and that if at any time the vehicle is involved in any type of accident, I will notify CNAC within 24 hours of the accident. If insurance is not in force and the vehicle is damaged or destroyed, I understand that all buyers are still responsible for any remaining payments.

7. During the term of the Contract, I understand that said vehicle may not be sold, left in the care of someone else, or encumbered in any way without the expressed written consent of CNAC.

8. I understand that the Contract provides for arbitration and that I, in certain cases, waive the right to a trial by jury for all claims covered by the arbitration provision.

9. I understand that I am in default under the terms of the contract if I fail to provide the additional forms and/or information required on the back of the Retail Installment Sale contract.

10. I understand that I have been provided the opportunity to have the vehicle inspected by someone else and to drive and inspect the vehicle myself. I am not relying on any representations or oral statements of employees or agents of J.D. Byrider in making my decision to purchase the vehicle.

11. I understand that all payments must be received on or before the due date shown on the Contract. I understand that these dates cannot be altered or changed.

12. I understand that all buyers on the Contract are responsible for the payments due on the Contract. If one buyer is unable or unwilling to make the payments, all other buyers will still be responsible for making the payments.

13. I understand that J.D. Byrider is relying on the information I have provided on my credit application and the information is correct to the best of my knowledge. I understand that J.D. Byrider may contact all of the references I have provided.

14. All down payment monies and/or trade-in vehicles are non-refundable.

. Form 3450                                                                                                          7/15/05

15. CNAC may provide information to credit bureaus about an insolvency, delinquency, late payment, or default on my account to include in my credit report.

16. I understand that any third party title check report provided to me is not a full vehicle history report.

I have read and fully understand the above statements.

_____    4-5-07
Buyer                              Date

_____    _____
Co-Buyer                           Date

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 801 South Grand Avenue, 9th Floor, Los Angeles, California 90017-4613.

On May 27, 2008, I served true copies of the following document(s) described as **DECLARATION OF ROBERT HIRST IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(2), OR IN THE ALTERNATIVE, TRANSFER VENUE OR COMPEL ARBITRATION AND STAY PROCEEDINGS** on the interested parties in this action as follows:

## SEE ATTACHED LIST

**BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Murchison & Cumming's practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent from e-mail address mwahlquist@murchisonlaw.com to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 27, 2008, at Los Angeles, California.

_____
Marian R. Wahlquist

C 08-01380 SC

**SERVICE LIST**
**Jessica Hartung vs. JD Byrider, Inc., JD Byrider of Chandler, CarNow Acceptance Company, John Anderson and T-Mobile USA, et al,**

| | |
|---|---|
| Jeremy Scott Golden<br>Law Offices of Eric F. Fagan<br>2300 Boswell Road, Suite 211<br>Chula Vista, CA 91914<br>619-656-6656 (telephone)<br>775-898-5471 (facsimile)<br>Email: jeremy@efaganlaw.com | Attorneys for Plaintiff, Jessica Hartung |
| Eric F. Fagan<br>Law Offices of Eric F. Fagan<br>2220 Otay Lakes Rd., Suite 502-84<br>Chula Vista, CA 91915<br>619-656-6656 (telephone)<br>775-898-5471 (facsimile)<br>Email: efagan@efaganlaw.com | Attorneys for Plaintiff, Jessica Hartung |
| Jason A. Yurasek<br>Perkins Coie LLP<br>Four Embarcadero Center, Suite 2400<br>San Francisco, CA 94111-4067<br>415-344-7021 (telephone)<br>415-344-7221 (facsimile)<br>Email: jyurasek@perkinscoie.com | Attorneys for Defendant T-Mobile USA, Inc. |