1  Michael B. Lawler (SBN 50972)
   Kasey C. Townsend (SBN 152992)
2  Anastasia K. Mazzella (SBN 245201)
   **MURCHISON & CUMMING, LLP**
3  2010 Crow Canyon Place, Suite 380
   San Ramon, California  94583
4  Telephone: (925) 365-3170
   Facsimile: (925) 365-3180
5  E-Mail:    mlawler@murchisonlaw.com
               ktownsend@murchisonlaw.com
6              amazzella@murchisonlaw.com

7  Attorneys for Specially-Appearing
   Defendants, BYRIDER FRANCHISING,
8  INC. (erroneously sued and served as J.D.
   Byrider, Inc.), Grace Auto, Inc. dba JD
9  Byrider (erroneously sued as JD Byrider of
   Chandler), and Grace Finance, Inc. dba
10 CNAC (erroneously sued as CarNow
   Acceptance Company)

11

12                 UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15 JESSICA HARTUNG, an individual,          CASE NO. C 08-01380 SC

16              Plaintiff,                  **[PROPOSED] ORDER GRANTING
                                            DEFENDANTS' MOTION TO**
17         vs.                              **DISMISS FOR LACK OF
                                            PERSONAL JURISDICTION**
18 J.D. BYRIDER, INC.; JD BYRIDER           **PURSUANT TO RULE 12(b)(2)**
   OF CHANDLER; CARNOW
19 ACCEPTANCE COMPANY; JOHN                 **Assigned to Hon. Samuel Conti**
   ANDERSON; and T-MOBILE USA,
20 INC. and DOES 1 through 10 inclusive,    **Date : July 25, 2008
                                            Time; 10:00 a.m.**
21              Defendants.                 **Courtroom: 1, 17**[th] **Floor**

22                                          Action Filed:   March 11, 2008
                                            Trial Date:     None Set
23

24

25        After consideration of the moving papers and relevant authorities submitted in

26 support of the Motion to Dismiss for Lack of Personal Jurisdiction filed by specially-

27 appearing defendants BYRIDER FRANCHISING, INC. (erroneously sued and served as

28 J.D. BYRIDER, INC.), GRACE AUTO, INC. dba J.D. BYRIDER (erroneously sued and

1  served as J.D. BYRIDER OF CHANDLER), and GRACE FINANCE, INC. dba CNAC

2  (erroneously sued and served as CARNOW ACCEPTANCE COMPANY), the Court

3  finds good cause to GRANT defendants' Motion.

4      IT IS HEREBY ORDERED that the Motion to Dismiss is GRANTED as to each

5  moving defendant and plaintiff's Complaint is DISMISSED WITH PREJUDICE.

6                                         I.

7                         **FACTUAL BACKGROUND**

8      This action arises out of damages allegedly sustained by plaintiff JESSICA

9  HARTUNG ("plaintiff") in or about January of 2008 as a result of allegedly unlawful and

10 harassing debt collection attempts.  Specifically, plaintiff alleges that she purchased a car

11 from "J.D. Byrider" and obtained financing from "CNAC."  Plaintiff further alleges that

12 she fell behind in her payments on the loan in or about October 2007 when she moved and

13 had trouble finding employment.  Plaintiff claims that at some point Byrider Franchising,

14 Grace Auto, and/or Grace Finance assigned her debt to defendant John Anderson for

15 collection.  Plaintiff further claims that Mr. Anderson subsequently made unlawful and

16 harassing collection attempts in violation of the Federal Debt Collection Protection Act,

17 15 U.S.C. § 1692, and California's parallel Rosenthal Act, Civil Code § 1788.10.

18 Plaintiff admits she was living in Stanislaus County at the time this action was filed and

19 when Mr. Anderson allegedly contacted her in January of 2008.  Plaintiff ultimately

20 surrendered her car to Grace Finance dba CNAC.

21     Plaintiff filed a complaint against specially-appearing defendants BYRIDER

22 FRANCHISING, INC. (erroneously sued and served as J.D. BYRIDER, INC.), GRACE

23 AUTO, INC. dba J.D. BYRIDER (erroneously sued and served as J.D. BYRIDER OF

24 CHANDLER), and GRACE FINANCE, INC. dba CNAC (erroneously sued and served as

25 CARNOW ACCEPTANCE COMPANY) for the following causes of action: (1) violation

26 of the California Rosenthal Fair Debt Collection Practices Act; (2) negligence; and (3)

27 invasion of privacy.

28 ///

1  On May 27, 2008, specially-appearing defendants Byrider Franchising, Grace Auto,
2  Inc., and Grace Finance Inc. filed a motion requesting that the Court dismiss plaintiff's
3  complaint for lack of personal jurisdiction. Alternatively, defendants requested that the
4  Court transfer the case from the Northern District to the Eastern District of the United
5  States District Court of California on the grounds that a substantial part of the alleged acts
6  occurred in Stanislaus County, which sits in the Eastern District. Finally, defendants
7  requested that the Court compel arbitration and stay proceedings if it found personal
8  jurisdiction exists and venue in the Northern District is proper.

## II.

## ANALYSIS

11  The Court finds that it lacks personal jurisdiction over specially-appearing
12  defendants. If the Court had not dismissed the complaint for lack of personal jurisdiction,
13  it would have transferred the action to the Eastern District of the United States District
14  Court of California or, assuming venue is proper, ordered plaintiff to submit to binding
15  contractual arbitration and stayed proceedings.

A.    **Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is**
      **GRANTED.**

18  Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may bring
19  a motion to dismiss on the ground that the court cannot assert personal jurisdiction over
20  that defendant. Although the defendant is the moving party, plaintiff bears the burden of
21  establishing that jurisdiction exists. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d
22  1007, 1019 (9th Cir. 2002). In analyzing jurisdictional issues, each defendant's contacts
23  with California must be assessed individually. Calder v. Jones, 465 U.S. 783, 790 (1984).

24  When assessing personal jurisdiction in a federal court, the starting point must
25  always be the "long arm" statute of the forum state. Haisten v. Grass Valley Medical
26  Reimbursement Fund, Ltd., 784 F.2d 1392, 1396 (9th Cir.1986). In California, a court
27  "may exercise jurisdiction on any basis not inconsistent with the Constitution of [the] state
28  or of the United States." Cal.Code Civ.Proc. § 410.10. Thus, federal courts in California

1  "may exercise jurisdiction to the fullest extent permitted by due process." Fields v.
2  Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir.1986).  Aside from the
3  "traditional" bases for personal jurisdiction, due process requires that the nonresident
4  "have certain minimum contacts with [the forum state] such that the maintenance of the
5  suit does not offend 'traditional notions of fair play and substantial justice.'" Terracom v.
6  Valley Nat'l Bank, 49 F.3d 555, 559 (9th Cir.1995) (quoting Int'l Shoe Co. v. Washington,
7  326 U.S. 310, 316 (1945)).

8          Under the "minimum contacts" analysis, there are essentially two types of personal
9  jurisdiction: general and specific.  General jurisdiction is when a defendant's contacts with
10  a forum state are so "substantial" or "continuous and systematic" as to justify the exercise
11  of jurisdiction over the defendant in all matters, even if the claims at issue are unrelated to
12  the defendant's forum-related activities. Perkins v. Benguet Consolidated Mining Co., 342
13  U.S. 437, 445 (1952).  Specific jurisdiction arises out of the defendant's contacts with the
14  forum.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985).  Whether specific
15  jurisdiction will lie "turns on the nature and quality of defendant's contacts in relation to
16  the cause of action." Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280,
17  1287 (9th Cir. 1997).  The Ninth Circuit has articulated a clear three-part test for
18  determining whether specific personal jurisdiction may be exercised: (1) the nonresident
19  defendant must do some act or consummate some transaction with the forum or perform
20  some act by which he purposefully avails himself of the privilege of conducting activities
21  in the forum, thereby invoking the benefits and protections of its laws; (2) plaintiff's claim
22  must be one which arises out of or results from the defendant's forum-related activities;
23  and (3) the exercise of jurisdiction must be reasonable. Id.

24          Defendants Byrider Franchising, Grace Auto, and Grace Finance move to dismiss
25  plaintiff's complaint for lack of personal jurisdiction.  For the reasons set forth herein,
26  defendants' motion is GRANTED.

27      *1.    The Traditional Bases for Personal Jurisdiction Do Not Exist.*

28

There are three "traditional" bases for the exercise of personal jurisdiction recognized since early common law: (1) personal service within the state (physical presence), (2) domicile in the state, and (3) consent or appearance in the action. See, e.g., Burnham v. Superior Court, 495 U.S. 604, 610-611 (1990).

First, Byrider Franchising, Grace Auto, and Grace Finance were served outside the State of California (Indiana and Arizona, respectively). Accordingly, there was no personal service in California. Second, none of the three defendants are domiciled in California. Byrider Franchising is incorporated in Indiana, has its principal place of business in Carmel, Indiana. Grace Auto and Grace Finance are both incorporated in Arizona with their principal places of businesses located in Arizona. Third, none of the defendants consented or have appeared in this action.

Accordingly, there is no "traditional" basis for jurisdiction over Byrider Franchising, Grace Auto, or Grace Finance.

### 2. The Court Lacks Personal Jurisdiction Over Byrider Franchising.

The Court finds that it lacks personal jurisdiction over Byrider Franchising. Plaintiff has failed to allege any facts in the complaint that would support the position that Byrider Franchising has the type of substantial or continuous and systematic contacts with California necessary to establish general jurisdiction or that the nature of Byrider Franchising's contacts in the state, in connection with the instant case, are sufficient to establish specific jurisdiction.

The standard for establishing general jurisdiction is high and requires that a defendant's contacts be of the sort that "approximate physical presence." Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (citations omitted). Here, Byrider Franchising's "contacts" with California are too limited to "approximate physical presence." Although Byrider Franchising is registered to sell franchises in California, it has entered into only one franchise agreement in the state. Although Byrider Franchising has advertised in  a national magazine that may have reached California residents, it has never directed any of its advertising primarily toward

California residents and its website merely imparts information to potential car buyers and franchisees. Most importantly, Byrider Franchising has never had any employees, servants, agents, officers, and/or directors residing or domiciled in California, has never maintained any bank accounts in California, owned, leased, rented, controlled, or maintained any real or personal property or other tangible assets in the State of California, has never paid taxes in California, has never maintained or operated any businesses, headquarters, branch offices or comparable facilities in California, and has never maintained any telephone listings or mailing addresses in California. In short, Byrider Franchising's contacts with California are simply too sparse and sporadic to constitute general jurisdiction.

As for specific jurisdiction, the record indicates that Byrider Franchising's sparse and sporadic contacts with California did not give rise to plaintiff's claims. Furthermore, there is no evidence or allegations establishing that Byrider Franchising took part in or ratified any of the alleged acts or omissions. In order to exercise specific jurisdiction over a franchisor who did not directly participate in the alleged misconduct, a plaintiff must establish the existence of an agency relationship existed between the franchisor and franchise. See, e.g., Kelton v. Stravinski, 138 Cal.App.4th 941, 947-948 (2006)(holding that if the franchise agreement gives the franchisor complete or substantial control over the franchisee an agency relationship exists; otherwise, the franchisee will be considered an independent contractor.) Here, Byrider Franchising did not exercise sufficient control over Grace Auto and Grace Finance to establish an agency relationship. Byrider Franchising did not oversee the day-to-day operations of the franchisees nor did it dictate or control the manner in which its franchisees collected debts. Moreover, Byrider Franchising did not hire, supervise, or control defendant John Anderson - the individual who allegedly contacted plaintiff in an attempt to collect on the past-due car loan.

Accordingly, the Court dismisses the complaint against Byrider Franchising with prejudice for lack of personal jurisdiction.

/ / /

C 08-01380 SC

3.    **The Court Lacks Personal Jurisdiction Over Grace Auto, Inc.**

The Court finds that it lacks personal jurisdiction over Grace Auto. Plaintiff has failed to allege any facts in the complaint or offer any evidence in opposition that would support the position that Grace Auto has any contacts with California, let alone the type of substantial or continuous and systematic contacts with California necessary to establish general jurisdiction. Plaintiff has also failed to allege any facts in the complaint or offer any evidence in opposition that establishing that Grace Auto played any role in the events that allegedly caused plaintiff's damages. As such, there is no specific jurisdiction over Grace Auto.

It is clear that Grace Auto has no contacts with California whatsoever. The business is incorporated in Arizona, has its principal place of business in Arizona, and has never maintained any businesses, headquarters, distributors, offices, dealerships, or financing services in California or appointed an agent to receive service of process in California. Furthermore, Grace Auto's employees, servants, agents, officers, and/or directors have always been domiciled in or residents of Arizona. Grace Auto has never maintained any bank accounts in California. Grace Auto has never owned, leased, rented, controlled, or maintained any real or personal property or other tangible assets in the State of California.

Moreover, like Byrider Franchising, Grace Auto played no role in the events giving rise to plaintiff's claims. Grace Auto assigned the car loan to Grace Finance. From there, Grace Finance collected on the note and proceeded to hire John Anderson when plaintiff stopped making payments. In order to exercise personal jurisdiction over a foreign corporation for another defendant's activities in the forum state, plaintiff must establish an agency relationship between the foreign corporation and the individual defendant. E.g., Magnecomp Corp. v. Athene Co., Ltd., 209 Cal.App.3d 526, 536–537 (1989). Here, however, Grace Auto did not hire, supervise, or control John Anderson. As such, Grace Auto cannot be forced to maintain an action in California based on his alleged acts. Furthermore, the record indicates that Grace Finance and Grace Auto are two separate

1 entities. Grace Auto had no supervisory authority or control over Grace Finance; thus
2 Grace Auto cannot be held to specific jurisdiction for any of Grace Finance's alleged acts
3 or omissions.

4      Accordingly, the Court dismisses the complaint against Byrider Franchising with
5 prejudice for lack of personal jurisdiction.

6      ### 4.    *The Court Lacks Personal Jurisdiction Over Grace Finance, Inc.*

7      The Court finds that it lacks personal jurisdiction over Grace Finance. Plaintiff has
8 failed to allege any facts in the complaint or offer any evidence in opposition that would
9 support the position that Grace Finance has any contacts with California, let alone the type
10 of substantial or continuous and systematic contacts with California necessary to establish
11 general jurisdiction. Plaintiff has also failed to allege any facts in the complaint or offer
12 any evidence in opposition that establishing that John Anderson was an agent of Grace
13 Finance such that it would be reasonable to impute his alleged acts in California to Grace
14 Finance for the purpose of establishing personal jurisdiction.

15      Grace Finance contacts with California are neither substantial or continuous and
16 systematic such that general jurisdiction exists. Like Grace Auto, Grace Finance is
17 incorporated in Arizona, has its principal place of business in Arizona, and has never
18 maintained any businesses, headquarters, distributors, offices, dealerships, or financing
19 services in California or appointed an agent to receive service of process in California.
20 Grace Finance has no contacts, relationships, sales, advertising, property, or other
21 activities with or within California. The only connection Grace Finance has in California
22 is plaintiff. This connection was made by virtue of plaintiff moving to this state.
23 However, unilateral activity by plaintiff or other persons over whom the nonresident
24 defendant has no control do not themselves satisfy the "purposeful availment"
25 requirement. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 US 408, 417 (1984).
26 Clearly, Grace Finance has not established a "physical presence" in California.

27      Furthermore, there is no evidence that Grace Finance should be subject to specific
28 jurisdiction in California by virtue of John Anderson's alleged acts. There is no evidence

1   establishing that Mr. Anderson is a resident of or domiciled in California.  Moreover,
2   Grace Finance did not control, supervise, or direct the details, manner, and/or methods Mr.
3   Anderson used to locate plaintiff and/or the subject vehicle.  As such, Mr. Anderson was
4   merely an independent contractor and any acts he may have allegedly committed in or
5   directed at California residents, such as plaintiff, are insufficient to establish specific
6   jurisdiction over Grace Finance.  <u>Magnecomp Corp. v. Athene Co., Ltd.</u>, <u>supra</u>, 209
7   Cal.App.3d at 536–537.

8       Accordingly, the Court dismisses the complaint against Byrider Franchising with
9   prejudice for lack of personal jurisdiction.

10  **B.    If this Action Were Not Being Dismissed for Lack of Personal Jurisdiction,**
11  **the Court Would Transfer the Case to the Eastern District of California.**

12      Even if personal jurisdiction existed over the moving parties, the Court would
13  transfer the case to the Eastern District of the United States District Court of California
14  which is where a substantial part of the events allegedly giving rise to this action occurred.

15      Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to bring a
16  motion to dismiss on the basis of improper venue. Venue in federal courts is governed
17  entirely by statute. <u>See</u> <u>Leroy v. Great Western United Corp.</u>, 443 U.S. 173, 181 (1979).
18  There are two grounds on which venue may be changed: (1) where venue is improper, a
19  court must dismiss or transfer under 28 U.S.C. § 1406; (2) where venue is proper, the
20  court may transfer to another district, for convenience, pursuant to 28 U.S.C. § 1404. In
21  either case, those districts in which venue would be proper are determined by 28 U.S.C. §
22  1391, or by the special venue statutes that may apply for given causes of action.  No
23  special venue statutes apply in the instant case.

24      The general federal venue statute is 28 U.S.C. § 1391. For cases arising under
25  federal law, such as the instant case, § 1391(b) allows that venue is proper in a district
26  where: (1) any defendant resides if all defendants reside in the same state; (2) a
27  "substantial part of the events or omissions" on which a claim is based occurred, or a
28  "substantial part of the property" that is the subject of the action is located; or (3) any

1  defendant "may be found," if there is no district in which the action may otherwise be
2  brought (under the first two prongs).  If a plaintiff commences an action in a district in
3  which venue is not proper, the court will (upon timely motion) dismiss the action for
4  improper venue or transfer the case to any district where it could have been brought "if it
5  be in the interest of justice." 28 U.S.C. § 1406(a); see e.g., District No. 1, Pacific Coast
6  District v. Alaska, 682 F.2d 797, 799 (9th Cir.1982).

7       In this case, the record clearly shows that not all of the defendants reside in the state
8  of California.  Byrider Franchising resides and is domiciled in the State of Indiana.  Grace
9  Auto and Grace Finance reside and are domiciled in the State of Arizona.  As such, the
10 provisions of 28 U.S.C. § 1391(b)(1) are not met here.  However, 28 U.S.C. § 1391(b)(2)
11 does apply.  In this case, a substantial part of the events or omissions allegedly occurred
12 in Modesto, California, which is located in Stanislaus County.  Stanislaus County is
13 located in the Eastern District of California.  Accordingly, the case should have been filed
14 in the Eastern District of California.

15 **C.    If this Action Were Not Being Dismissed for Lack of Personal Jurisdiction**
16 **      and Venue Was Proper, the Court Would Compel Arbitration and Stay**
17 **      Proceedings.**

18      Even if the Court personal jurisdiction existed and venue was proper in the
19 Northern District, the Court would have compelled arbitration and stayed proceedings
20 pursuant to the arbitration agreement contained in the Retail and Installment Contract and
21 Security Agreement executed by plaintiff on or about April 5, 2007.

22      A party who wishes to arbitrate a dispute first brought in a district court can seek a
23 stay of the court proceedings under the Federal Arbitration Act ("FAA"), while seeking a
24 concurrent order under the FAA compelling arbitration. 9 U.S.C. §§ 3, 4. Sink v. Aden
25 Enterprises, Inc., 352 F.3d 1197, 1201 (9th Cir. 2003). The district court's role under the
26 FAA is limited to determining the following: (1) whether the arbitration agreement is
27 valid and enforceable and (2) whether the claims asserted are within the purview of the
28 arbitration agreement. Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126,

1130 (9th Cir. 2000).  If the answer is affirmative on both counts, then the FAA requires

the court to enforce the arbitration agreement in accordance with its terms.  Id.

To evaluate the validity of an arbitration agreement, federal courts "'should apply

ordinary state-law principles that govern the formation of contracts.'"  Ingle v. Circuit City

Stores, Inc., 328 F.3d 1165, 1170 (9th Cir.2003) (quoting First Options of Chi., Inc. v.

Kaplan, 514 U.S. 938, 944 (1995)).  Thus, contract defenses generally applicable under

state law, including fraud, duress, or unconscionability may be asserted to invalidate

arbitration agreements.  Bischoff v. DirecTV, Inc., 180 F.Supp.2d 1097, 1102 (C.D. Cal.

2002).  In this case, the law of both the forum state (California) and the state in which the

contract was made (Arizona) provide that an arbitration agreement is unenforceable if it is

both procedurally unconscionable (i.e., containing terms that are outside the reasonable

expectations of the parties) and substantively unconscionable (i.e. containing terms that

are overly harsh or one-sided).  See e.g., Armendariz v. Foundation Health Psych. Servs.,

24 Cal.4th 83, 114 (2000) (setting forth California law); Darner Motor Sales, Inc. v.

Universal Underwriters Ins. Co., 140 Ariz. 383, 392 (1984) (setting forth Arizona law).

### *1.    The arbitration provision is valid and enforceable.*

First, the subject purchase contract and arbitration provision are procedurally valid.

A contract of adhesion, generally speaking, is " 'a standardized contract, which, imposed

and drafted by the party of superior bargaining strength, relegates to the subscribing party

only the opportunity to adhere to the contract or reject it.'"  Fittante v. Palm Springs

Motors, Inc., 105 Cal.App.4th 708, 721 (2004); Harrington v. Pulte Home Corp., 211

Ariz. 241, 248-253 (2005).  Here, the subject arbitration provision is part of a standardized

car purchase agreement, there is no evidence that plaintiff was presented with the contract

on a "take it or leave it" basis.  As such it cannot be called an "adhesion" contract.  Even if

the contract could be fairly described as an adhesion contract, "describing a contract as

one of adhesion does not . . . affect its enforceability."  Fittante, supra, 105 Cal.App.4th at

722.    An adhesion contract remains fully enforceable unless "(1) the provision falls

outside the reasonable expectations of the weaker party, or (2) the provision is unduly

oppressive or unconscionable." Id. Here, plaintiff was not the weaker party. She could have walked away and decided not to buy the car.

Second, the arbitration provision is substantively valid. An arbitration agreement is substantively unconscionable if it is unfairly one-sided, or, in other words, "lacks mutuality." Armendariz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83,99 (2000)(to be enforceable, agreement must possess a "modicum of bilaterality"). An agreement need not mandate the arbitration of all claims between the parties. Id. at 120. It lacks "mutuality" *only* if it requires "one contracting party, but not the other, to arbitrate all claims arising out of the same transactions or occurrences." Id. (holding the agreement before it was unconscionable because it required employees, but not employers, to arbitrate unlawful termination claims). In this case, the arbitration agreement applies to all parties and to all disputes arising from the purchase and financing of the car. As such, it contains a "modicum of bilaterality."

### 2. *Plaintiff's claims fall within the purview of the arbitration provision.*

"[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986); Comedy Club, Inc. v. Improve West Associates, 514 F.3d 833, 842 (9th Cir. 2007).

In this case, the arbitration agreement unequivocally covers every possible type of dispute that may arise between a car buyer and the seller and/or finance company. The first paragraph of the arbitration agreement provides that any "Dispute" arising between the parties shall be resolved by "binding arbitration." The second paragraph of the agreement defines "dispute" as "any action, dispute, claim, or controversy of any kind arising out, in connection with, or in any way related to the sale of the Vehicle, financing . . . collection . . . or any other aspect whatsoever of the past, present, or future relationship or conduct of the Parties." The second paragraph of the agreement further states that the

1  term "dispute" includes without limitation "claims under federal or state consumer

2  protection laws; claims in tort or contract; claims under statutes or common law . . ."

3      Accordingly, plaintiff's claims against each moving defendant fall within the

4  arbitration agreement.

5      **3.    *Plaintiff agreed to arbitrate despite failing to initial the box.***

6      The fact that plaintiff failed to initial the box at the end of the arbitration provision

7  does not affect the provision's validity or enforceability.  The Ninth Circuit has recognized

8  that "[w]hile the FAA 'requires a writing, it does not require that the writing be signed by

9  the parties.'"  Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1439 (1994) (citation omitted).

10 Furthermore, under both California and Arizona law, a party can be bound by an

11 arbitration clause even if he or she failed to read or understand it - so long as the clause is

12 not procedurally and substantively unconscionable.  Bolanos v. Khalatian, 231 Cal.App.3d

13 1586, 1590 (1991); Harrington v. Pulte Home Corp., 211 Ariz. 241, 247 (2005).

14     Although the plaintiff in the instant case failed to initial the box located at the

15 bottom of the arbitration provision, she signed the contract itself.  Directly above

16 plaintiff's signature, the contract states in bold, capital letters: "This contract contains an

17 arbitration of disputes provision which governs certain disputes between the parties."

18 Furthermore, plaintiff signed a Buyer's Statement of Understanding wherein she initialed

19 the box for item number eight, which states: "I understand that the Contract provides for

20 arbitration and that I, in certain cases, waive the right to a trial by jury for all claims

21 covered by the arbitration provision."

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

# III.

# CONCLUSION

For the reasons articulated above, the Court GRANTS specially-appearing defendants' Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rules of Civil Procedure, Rule 12(b)(2).    Plaintiff's complaint is DISMISSED WITH PREJUDICE.

DATED:

_____
Honorable Samuel Conti
United States District Court Judge

J:\AKMJD BYRIDER_Final\PROPOSED ORD-MTD-052708

C 08-01380 SC

1    **PROOF OF SERVICE**

2    **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3        At the time of service, I was over 18 years of age and not a party to this action.  I am
employed in the County of Los Angeles, State of California.  My business address is 801
4    South Grand Avenue, 9th Floor, Los Angeles, California 90017-4613.

5        On May 29, 2008, I served true copies of the following document(s) described as
**[PROPOSED] ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF**
6    **PERSONAL JURISDICTION PURSUANT TO RULE 12(B)(2)** on the interested parties in
this action as follows:

7                                   **SEE ATTACHED LIST**

8    **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  Based on a court order or an agreement
of the parties to accept service by e-mail or electronic transmission, I caused the
9    document(s) to be sent from e-mail address mwahlquist@murchisonlaw.com to the persons
at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time
10   after the transmission, any electronic message or other indication that the transmission was
unsuccessful.
11

12       I declare under penalty of perjury under the laws of the United States of America that
the foregoing is true and correct and that I am employed in the office of a member of the bar
13   of this Court at whose direction the service was made.

14       Executed on May 29, 2008, at Los Angeles, California.

15

16                                   _____
                                         Marian R. Wahlquist
17

18

19

20

21

22

23

24

25

26

27

28

**SERVICE LIST**
**Jessica Hartung vs. JD Byrider, Inc., JD Byrider of Chandler, CarNow Acceptance Company, John Anderson and T-Mobile USA, et al,**

| | |
|---|---|
| Jeremy Scott Golden<br>Law Offices of Eric F. Fagan<br>2300 Boswell Road<br>Suite 211<br>Chula Vista, CA  91914<br>Telephone: 619-656-6656<br>Facsimile: 775-898-5471<br>E-mail:  jeremy@efaganlaw.com | Attorneys for Plaintiff, Jessica Hartung |
| Eric F. Fagan<br>Law Offices of Eric F. Fagan<br>2220 Otay Lakes Road<br>Suite 502-84<br>Chula Vista, CA  91915<br>Telephone: 619-656-6656<br>Facsimile: 775-898-5471<br>E-mail: efagan@efaganlaw.com | Attorneys for Plaintiff, Jessica Hartung |
| Jason A. Yurasek<br>Perkins Coie LLP<br>Four Embarcadaro Center<br>Suite 2400<br>San Francisco, CA  94111<br>Telephone: 415-344-7021<br>Facsimile: 415-344-7221<br>E-mail:  jyurasek@perkinscoie.com | Attorneys for Defendant, T-Mobile USA, Inc. |

C 08-01380 SC